(April 14, 1915.)

## MAYNARD BROWN, Respondent, v. CELIA A. BROWN, Appellant.

[148 Pac. 45.]

ADULTERY—FINDINGS—SUFFICIENCY OF EVIDENCE.

    1. Where a decree of divorce is granted on the ground of adultery, the evidence ought to be clear and conclusive of that offense.

    2. The evidence *held* not sufficient to support the findings of the trial court.

APPEAL from the District Court of the Second Judicial District for Clearwater County. Hon. Edgar C. Steele, Judge.

Action to procure a divorce. Judgment for plaintiff. *Reversed.*

Edward Hofstede, for Appellant.

The proof of adultery as a ground for divorce must be clear and positive. (*Berckmans v. Berckmans,* 17 N. J. Eq. 453; *Gibson v. Gibson,* 18 App. Cas. (D. C.) 72; *Moller v. Moller,* 115 N. Y. 466, 22 N. E. 169.)

Testimony that adultery was committed without evidence as to the facts upon which the conclusion is based is insufficient. (*Herrick v. Herrick,* 31 Mich. 298.)

If, after careful consideration, the evidence of guilt is inconclusive, a divorce will be denied. (*Haggard v. Haggard,* 62 Iowa, 82, 17 N. W. 178 [boastful admission by defendant and testimony by hostile witness] ; *Scheffling v. Scheffling,* 44 N. J. Eq. 438, 15 Atl. 577 [uncorroborated and improbable evidence of a single witness]).

An adulterous disposition is not necessarily shown by the existence of a state of undue familiarity between the parties accused (*Pollock v. Pollock,* 71 N. Y. 137), and in the absence of evidence of an adulterous inclination, proof of opportunity alone does not establish adultery. (*Osborn v. Osborn,* 44 N. J. Eq. 257, 9 Atl. 698, 10 Atl. 107, 14 Atl. 217.)

John R. Becker, for Respondent.

The appellant's case under her cross-complaint is not sufficient as a defense and bar to respondent's right to a decree unless she has made out a case which would entitle her to a decree against her husband if the charge of adultery on her part had not been alleged or proved. (Sec. 2656, Rev. Codes; *Stoneburner v. Stoneburner,* 11 Ida. 603, 83 Pac. 938; *Conant v. Conant,* 10 Cal. 249, 70 Am. Dec. 717.)

SULLIVAN, C. J.—This action was brought to procure a divorce on the ground of adultery, for the care and custody of three minor children, and for the distribution of certain property belonging to the plaintiff and defendant.

The defendant answered, denying some of the material allegations of the complaint, and by way of cross-complaint demanded a divorce from the plaintiff on the ground of cruel and inhuman treatment. The cross-complaint was answered by the plaintiff and the cruel and inhuman treatment charged in the cross-complaint denied.

Upon the issues thus made the cause was tried and finding of facts and decree and judgment entered in favor of the plaintiff, granting him a divorce on the ground of adultery and awarding the youngest child to the mother and the other two to the mother of the plaintiff, and making a distribution of the property belonging to the parties. The appeal is from the judgment.

Several errors are assigned, to the effect that the evidence is insufficient to sustain the findings; that the finding made on the issues raised on the cross-complaint is not sufficient; that the court erred in awarding certain property to the plaintiff and in awarding the custody of the two older minor children to the mother of the plaintiff, and in not requiring the plaintiff to pay the attorney's fees of the defendant, and that the court erred in admitting and excluding certain evidence.

It is first contended that the evidence is not sufficient to support the findings of the court whereby the court found the defendant guilty of adultery. The court found that one act of adultery was committed with one Snodgrass, now deceased, on or about the first day of November, 1912. The court also found that on divers other days and times between the 1st of November, 1912, and the 25th of February, 1914, the defendant committed adultery with said Snodgrass at and in the vicinity of the residence of plaintiff near the village of Orofino.

The record shows that said Snodgrass had boarded in the family of the plaintiff and defendant for three months or more and was a very frequent visitor at their home; that the plaintiff's mother had lived in the family and was a frequent visitor there; also one of the principal witnesses for the defendant, a Mrs. Mary Norris, had boarded for about three

months in the Brown family, she being the only witness who testified to having seen any act of sexual intercourse between the defendant and said Snodgrass. On her cross-examination she admitted that she did not see them having sexual intercourse, but the defendant was sitting straddle of his lap; that she did not see them in the act; that although she had boarded there for three months or more, she never saw any other act that led her to believe that they were guilty of the act charged, but she thought they were a little too familiar in the way they talked, but did not remember any of the conversation or conversations that suggested familiarity; that she never "came right out and told anybody" of said compromising position she claimed to have seen them in, although she remained at the residence of Brown for some weeks after she claimed to have seen said act of intimacy.

The record shows that this witness had a grudge against the appellant, and that she had said she intended "to get even" with her. The appellant denied ever having sexual intercourse with Snodgrass and also testified that she had a conversation with the witness, Mary Norris, and testified in regard to such conversation as follows: "Well, I asked her, I says, 'Mamie'—she had talked before and said she would get even—'now,' I says, 'I would like to know what you are going up there and tell and hurt me, if you tell the truth, for,' I says, 'you know you can't tell anything to hurt me, and tell the truth.' She says, 'I don't care a damn; I can get even with you. If I don't, I will get paid for it; there is money in it anyway.' "

This witness, Mary Norris, it appears, testified on the criminal trial in which the respondent was prosecuted for the murder of Snodgrass, to some things damaging to the character of the appellant. The plaintiff himself testified that he knew of no acts of sexual intercourse between the appellant and Snodgrass. The mother of the plaintiff, who lived in the family for some time, testified she thought Snodgrass too familiar in the Brown home, but did not testify that she knew of any acts of sexual intercourse between them. The fact is clearly shown by the record that no act of sexual intercourse

was testified to against the defendant aside from the testimony of Mary Norris, and on cross-examination her testimony shows that she saw the defendant in a compromising position with Snodgrass (which was contradicted by the appellant), and her testimony, taken as a whole, is of a very suspicious character, since it is shown that she was bitterly prejudiced against the appellant.

The evidence shows that Snodgrass was a frequent and welcome visitor at the Brown home, and the plaintiff himself testified that he had observed no acts of undue familiarity between his wife and the said Snodgrass, but that he had heard things from others that had led him to believe that there was too much familiarity between them.

It was sought to be shown that at the time the plaintiff killed Snodgrass appellant had gone over the river to meet him, but the evidence clearly shows that she went over to meet her husband as well as Snodgrass, since she knew that her husband was in Orofino and would shortly return home. The husband had intended to go to Kamiah the morning of the day of the killing, but did not go, and the son of plaintiff and defendant returned from school about 5 o'clock on the evening of the day of the killing and informed the appellant that he had seen his father in town after the train had gone to Kamiah. On that point the appellant testified as follows:

"Yes. He told me that morning that he was going to Kamiah that evening; he told me two or three days before he was going, and he said he didn't like to go; he would like to get someone else to go in his place; he said he didn't like to go himself, and he said, 'I wonder if I couldn't get Jim to go and take my place'; he says, 'I am going to ask him if he won't go up in my place,' and he didn't go. I don't know whether he asked Snodgrass or not, but he told me he was going to, but he told me that morning—he came over town and said he was going to Kamiah. I says, 'You will be back for dinner, then'; he says, 'I don't know whether I will or not.' I says, 'Will you call me up before you go, if you leave?' And he says, 'Yes, I will,' and he never came back,

and Norman came home about 5 from school, and he says, 'I seen Dad over town and the train was gone,' and I knew he hadn't gone to Kamiah.''

The appellant also explained that she often crossed the river to meet her husband, and since she knew he was in town she expected him home that evening. She also knew that Snodgrass intended to come over that evening, and she crossed the river and started down toward town to meet them, and her husband appeared in a disguise and knocked her down and beat her and gagged her. Shortly afterward Snodgrass came along and he shot him with a load of ''double B'' shot, from the effects of which Snodgrass shortly died.

The impression intended to be conveyed by the plaintiff was that his wife had crossed the river to meet Snodgrass, but the record shows that she knew her husband was in Orofino, which was a mile from their residence, and would in all probability be home that evening.

Since a new trial must be granted, we will not go any further into the evidence, but it is sufficient to say that acts and circumstances which have been shown by the plaintiff in support of the allegations of the complaint are not sufficient to support the findings of the trial court. The third finding is to the effect that the defendant committed adultery with one Snodgrass on or about the first day of November, 1912. This is based on the testimony of Mary Norris, which testimony, taken in connection with other testimony, is not sufficient to support that finding. The fourth finding of fact is that on divers and other days and times between the first day of November, 1912, and the 25th of February, 1914, the said defendant committed adultery with said Snodgrass at and in the vicinity of the residence of the plaintiff and defendant near the village of Orofino. There is absolutely no evidence in the record to support that finding.

In cases of this character, where the mother of a family of children is charged with the offense with which this defendant is charged, before blighting her life and the lives of her children, the evidence ought to be clear and conclusive, and the defendant should not be found guilty of such an

offense upon mere suspicion and conjecture.    The lives and character of the children are of great moment and importance, not only to themselves, but to the state, and a child should not be branded by a decision such as we have in this case unless the evidence is clear and very conclusive, for human nature is so constituted that these children would be recognized and pointed out by their associates and people among whom they live as children of an adulterous mother; and the mother must continue, if this judgment is permitted to stand, with the reputation of being an adulteress, and will be scorned and shunned by many who would no doubt otherwise be of a friendly disposition toward her.    It is a matter of public policy, also, that divorces, especially on the ground of adultery, should be granted only upon very clear and conclusive evidence.

We conclude that the evidence is not sufficient to support the findings, and that the judgment must be set aside and a new trial granted.    Costs awarded to appellant.

Budge, J., concurs.

Morgan, J., did not sit at the hearing and took no part in the decision of this case.