620 P.2d 783

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael HIGHTOWER, Defendant–Appellant.**

**No. 12282.**

Supreme Court of Idaho.

Dec. 12, 1980.

Ellison M. Matthews of Matthews, Lee & Wilson, Robert C. Montgomery, Boise, for defendant–appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff–respondent.

BISTLINE, Justice.

At a jury trial defendant–appellant Michael Hightower was convicted of rape and second degree kidnapping; he was sentenced to a term of confinement not exceeding 25 years.

On December 20, 1973, Hightower, who was then in the custody of the mental health unit of the Idaho State Penitentiary, escaped and allegedly kidnapped and raped a Boise State University coed. Captured in another state, he was returned to Boise where, almost 3 years later, he was tried and convicted. A full understanding of this case requires a detailed examination of the unique circumstances and procedures leading to the convictions challenged on appeal.

I.

An information was filed on November 20, 1972, charging Hightower with two counts of rape. (Not to be confused with the rape and kidnapping of which he was convicted.) Dr. F. LaMarr Heyrend, a psychiatrist, examined Hightower, reporting to the court that Hightower was competent to stand trial, but that at the time of the alleged criminal conduct he lacked substantial capacity to conform his conduct to the requirements of the law. Based on this report, Hightower notified the court of his intent to move for a judgment of acquittal

on the grounds of mental disease or defect pursuant to I.C. § 18–213.[1]

The State did not oppose the motion or challenge the procedure followed. The motion was granted, and on April 24, 1973, judgment of acquittal was entered on the grounds of mental disease or defect excluding criminal responsibility. Finding that Hightower was a dangerously mentally ill person, the court committed him to the mental health facility and program at the Idaho State Penitentiary.

On December 20, 1973, Hightower escaped and allegedly committed the crimes for which he would be later convicted. An information charging him with rape and second degree kidnapping was filed on April 18, 1974, to which Hightower pleaded not guilty, again filing a notice of intent to rely upon the defense of mental disease or defect, pursuant to I.C. § 18–209. The court, as directed by I.C. § 18–211, again ordered psychiatric evaluation.[2] Dr. Heyrend examined Hightower extensively at least four times between May and September of 1974, submitting his report in early October, 1974. Again he concluded that Hightower at the time of the alleged 1973 crimes suffered from a mental disease or defect which substantially impaired his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, and again a motion for acquittal was made. Again the State did not resist the motion. The court found that at the time of the 1973 offenses Hightower was suffering from mental disease or defect which substantially impaired his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. The court further

1. "18–213. ACQUITTAL ON GROUND OF MENTAL ILLNESS–EXAMINATION BY PSYCHIATRIST OF DEFENDANT'S CHOICE–PSYCHIATRISTS AS WITNESSES.–(1) If the report filed pursuant to section 18–211, Idaho Code, finds that the defendant at the time of the criminal conduct charged suffered from a mental disease or defect which substantially impaired his capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law, and the court, after a hearing if a hearing is requested by the prosecuting attorney or the defendant, is satisfied that such impairment was sufficient to exclude responsibility, the court on motion of the defendant shall enter judgment of acquittal on the ground of mental disease or defect excluding responsibility.

"(2) When, notwithstanding the report filed pursuant to section 18–211, Idaho Code, the defendant wishes to be examined by a qualified psychiatrist or other expert of his own choice, such examiner shall be permitted to have reasonable access to the defendant for the purpose of such examination.

"(3) Upon the trial, the psychiatrists who reported pursuant to section 18–211, Idaho Code, may be called as witnesses by the prosecution, the defendant or the court. If the issue is being tried before a jury, the jury may be informed that the psychiatrists were designated by the court or by the director of the department of health and welfare at the request of the court, as the case may be. If called by the court, the witness shall be subject to cross–examination by the prosecution and by the defendant. Both the prosecution and the defendant may summon any other qualified psychiatrist or other expert to testify, but no one who has not examined the defendant shall be competent to testify to an expert opinion with respect to the mental condition or responsibility of the defendant, as distinguished from the validity of the procedure followed by, or the general scientific propositions stated by, another witness.

"(4) When a psychiatrist or other expert who has examined the defendant testifies concerning his mental condition, he shall be permitted to make a statement as to the nature of his examination, his diagnosis of the mental condition of the defendant at the time of the commission of the offense charged and his opinion as to the extent, if any, to which the capacity of the defendant to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law or to have a particular state of mind which is an element of the offense charged was impaired as a result of mental disease or defect at that time. He shall be permitted to make any explanation reasonably serving to clarify his diagnosis and opinion and may be cross–examined as to any matter bearing on his competency or credibility or the validity of his diagnosis or opinion."

2. Under the provisions of I.C. § 18–211, the court is required to appoint, or to request the director of the Department of Health and Welfare to designate, at least one qualified psychiatrist to examine and report upon the mental condition of the defendant. A trial court is not limited to utilizing the services of but one psychiatrist.

found that Hightower presented a substantial risk of physical harm to himself and others and was dangerous to such a degree that a more secure custodial facility was required than that appropriate for most involuntarily committed mentally ill persons. The court entered a judgment of acquittal on grounds of mental disease or defect and ordered Hightower committed to the mental health facility at the Idaho State Penitentiary as a dangerously ill person.

In April, 1975, Hightower filed an application, pursuant to I.C. § 18–214,[3] for conditional release from the mental health facility at the Idaho State Penitentiary to a less structured environment. The district court ordered Hightower to undergo psychiatric evaluation by two psychiatrists, as required by subsection (2) of I.C. § 18–214, and Drs. Cornell and Estess were appointed by the court. Hearing was held on July 11, 1975; the psychiatrists and Hightower were ex-

3. "18–214. COMMITMENT OF ACQUITTED DEFENDANT–CONDITIONAL RELEASE–REVOCATION OF RELEASE WITHIN FIVE YEARS.–(1) When a defendant is acquitted on the ground of mental disease or defect excluding responsibility, the court shall order him to be committed to the custody of the director of the department of health and welfare to be placed in an appropriate institution for custody, care and treatment.

"(2) If the director of the department of health and welfare is of the view that the person committed to his custody, pursuant to paragraph (1) of this section, may be discharged or released on condition without danger to himself or to others, he shall make application for the discharge or release of such person in a report to the court by which such person was committed and shall transmit a copy of such application and report to the prosecuting attorney of the county from which the defendant was committed. The court shall thereupon appoint at least two (2) qualified psychiatrists to examine such person and to report within sixty (60) days, or such longer period as the court determines to be necessary for the purpose, their opinion as to his mental condition. To facilitate such examination and the proceedings thereon, the court may cause such person to be confined in any institution located near the place where the court sits, which may hereafter be designated by the director of the department of health and welfare as suitable for the temporary detention of irresponsible persons.

"(3) If the court is satisfied by the report filed pursuant to paragraph (2) of this section and such testimony of the reporting psychiatrists as the court deems necessary that the committed person may be discharged or released on condition without danger to himself or others, the court shall order his discharge or his release on such conditions as the court determines to be necessary. If the court is not so satisfied, it shall promptly order a hearing to determine whether such person may safely be discharged or released. Any such hearing shall be deemed a civil proceeding and the burden shall be upon the committed person to prove that he may safely be discharged or released. According to the de-

termination of the court upon the hearing, the committed person shall thereupon be discharged or released on such conditions as the court determines to be necessary, or shall be recommitted to the custody of the director of the department of health and welfare, subject to discharge or release only in accordance with the procedure prescribed above for a first hearing.

"(4) If, within five (5) years after the conditional release of a committed person, the court shall determine, after hearing evidence, that the conditions of release have not been fulfilled and that for the safety of such person or for the safety of others his conditional release should be revoked, the court shall forthwith order him to be recommitted to the custody of the director of the department of health and welfare subject to discharge or release only in accordance with the procedure prescribed above for a first hearing.

"(5) A committed person may make application for his discharge or release to the court by which he was committed, and the procedure to be followed upon such application shall be the same as that prescribed above in the case of an application by the director of the department of health and welfare. However, no such application by a committed person need be considered until he has been confined for a period of not less than six (6) months from the date of the order of commitment, and if the determination of the court be adverse to the application, such person shall not be permitted to file a further application until one (1) year has elapsed from the date of any preceding hearing on an application for his release or discharge.

"(6) If a defendant escapes from custody during his confinement, the director shall immediately notify the court from which committed, the prosecuting attorney and the sheriff of the county from which committed. The court shall forthwith issue an order authorizing any health officer, peace officer, or the director of the institution from which the defendant escaped, to take the defendant into custody and immediately return him to his place of confinement."

amined. On August 29, 1975, the court issued a memorandum decision in which it found, based on the evaluations of the defendant presented to it at the July 11 hearing, that Hightower was not then suffering from mental disease or defect and, additionally, that he *probably* never had suffered from mental disease or defect. The court added therein its opinion that Hightower *probably* should not ever have been relieved of criminal liability for the crimes alleged to have been committed by him. The court also stated that if the State were to allege fraud or collusion or newly discovered evidence, before the statute of limitations expired, the court would consider whether the judgment of acquittal of the 1973 crime should be reopened. Finding that Hightower still represented a threat to the safety of the public, the court refused to order Hightower's release until Hightower presented to the court a specific plan for continued treatment under circumstances which would reasonably guarantee the public's safety.

Accepting the court's suggestion, the State moved to set aside the judgment of acquittal by reason of mental disease or defect entered October 22, 1974, and sought to reopen criminal proceedings.

The grounds providing the basis for the State's motion are best observed by considering the full text of the motion:

"(1) Two psychiatrists, Dr. Cornell and Dr. Estes, testified on July 9, 1975, that the defendant, Michael Hightower was not mentally ill, but suffered from a personality disorder causing him to repeatedly be in conflict with the norms of society;

"(2) Both psychiatrists further testified that in their opinion, Michael Hightower was not mentally ill or suffering mental disease or defect at the time of the occurrence of the above entitled matter;

"(3) Both psychiatrists disagreed with the original diagnosis of Dr. F. Lamar Heyrund (upon which the Court's commitment was based) and expressed their opinion that Mr. Hightower's personality trait was one including manipulation and use of the psychiatric and psychological professions in an attempt to escape responsibility for criminal conduct;

"(4) The latest proceedings raised by the defendant for release or modification of his treatment program arise out of his original commitment based on Dr. Heyrund's report and are part of post–commitment proceedings allowed by the Idaho Code;

"(5) The interests of justice will have been abused if a person is able to escape responsibility for criminal conduct by feigning mental illness or manipulating the psychiatric profession to his own advantage;

"(6) This proceeding would provide the court and all parties the necessary forum to:

(a) test specific issues of double jeopardy and speedy trial arising over defendant's commitment on this charge, and

(b) a conclusive determination of defendant's mental state, now and at the time of the commission of the above entitled matter.

"(7) This motion is brought in the interests of justice within two years after a judgment of acquittal upon the ground of mental disease or defect was entered and the recently exposed error in psychiatric diagnosis, together with the testimony of Doctors Estess and Cornell, constitute newly discovered evidence."

A supporting brief sought to raise issues of constitutionality and newly discovered evidence:

"Idaho Code section 18–213(1) is unconstitutional and in direct violation of the Idaho Constitution, Article 1, section 7 as applied here in that section 18–213(1) allows a court to determine a factual issue which would otherwise be solely the province of the jury, and therefore, this code section and paragraph deprives the State and the defendant of a jury trial on a felony matter. The State is aware of no decision allowing either the State or the defendant to waive a jury trial on a felony in Idaho on an issue which is to be determined solely by the jury (i. e. jury

verdict of not guilty, not guilty by reason of mental disease or defect, or guilty). The issue of not guilty by reason of mental disease or defect is a mixed question of fact and law solely for the determination of the jury. The Idaho legislature may not amend the Idaho Constitution by legislative action alone. Since a jury trial may only be waived by the prosecution and the defense in cases other than a felony, Idaho Code section 18–213(1) violates the Idaho Constitution Article 1, section 7 in any application that allows the court to determine a jury issue in a pre–trial proceeding. In effect, the defendant is granted a court trial on the issue of mental disease or defect. The jury is the only entity constitutionally allowed to make such a determination and that can only be done at the time of trial and not by a pre–trial proceeding.

.    .    .    .    .

"Therefore, the State would respectfully urge the court to allow the State to reopen the criminal proceedings and the issue of the judgment of acquittal based on mental disease or defect due to the recent appearance of newly discovered evidence in the form of the testimony of Doctors Estess and Cornell, and the points and authorities referred to by the State in this brief."

Hightower's counsel, in their brief in opposition to the motion, urged:

"The primary question, it would therefore appear, is not whether the Court has the authority to enter a judgment of acquittal under Section 18–213 of the Idaho Code, but whether such action by the Court can at this late date, be tested. It is respectfully submitted that if the prosecution disagreed with the action of the Court in October of 1974, or with the opinion of Dr. Heyrend, upon which the Court acted, that the state had the authority to petition the Court under Section 18–211 of the Idaho Code, to appoint other psychiatrists to examine the defendant. Thereafter, the State would have had the right to subpoena such other psychiatrists and have the Court con-

sider their testimony upon the question of whether a judgment of acquittal based upon mental disease or defect should enter. Additionally, the State would have had the right to proceed in the Idaho Supreme Court by way of a Writ of Prohibition if it, in fact, felt that this Court was acting outside the perimeters of Idaho's Constitution.

.    .    .    .    .

"It is inconceivable that the State can allow the Court to proceed to enter a Judgment of Acquittal based on mental disease or defect and allow the Court to enter its Order of Commitment to the Idaho State Penitentiary mental facility and program and, in essence, allow the Court to lock an individual up for two years and then, prior to the Statute of Limitations in such case having run, petition the Court to set aside such Orders and proceed to trial, the end result of such being the desire of the State to again have the Court lock up such individual for a further extended period of time. The State must make an election and the undersigned submits the State did so make an election in the above action when it acquiesced to the Court's proceedings in October of 1974, and took no action, other than to allow Mr. Hightower to be committed pursuant to the Judgment of Acquittal Based Upon Mental Disease or Defect."

In granting the motion, the district court, erroneously misunderstanding that Dr. Heyrend was Hightower's psychiatrist in the doctor's representations to the court, rationalized that:

"The state has been denied its opportunity to contest the psychiatric report that the defendant was not competent to commit crime because of the state's reliance on the diagnosis of Dr. Heyrend. That is to say, *the defendant's psychiatrist* represented to the court and to the state that the defendant was not competent to commit a crime at the time of the incident in question. In reliance on this representation, the state did not resist the acquittal on grounds of mental disease or defect

excluding responsibility. Along comes two other doctors who say the first diagnosis was not correct.

"While this testimony is disputed, it is sufficiently convincing so that a jury could find that the defendant was mentally competent to commit a crime. The state has been prevented by acts of the defendant from presenting all of its case to the court. Where this occurs because of fraud or deception or where an unconscionable plan or scheme was used to obtain this result or to improperly influence the Court in its decision, then a fraud upon the court has been committed and the matter may be reopened. Action to set aside judgments for fraud upon the court have been allowed where by fraud or deception practiced on a party, (such as by keeping him away from court or by a false promise of a compromise or where a defendant had no knowledge of a suit because of being kept in ignorance by acts of the plaintiff) a party has been prevented from fully presenting his case. Ordinarily, Courts will not set a judgment aside for fraud upon the Court unless the fraud was intentional or designed. In addition, some degree of diligence has been expected of the offended party to protect himself by making sure he conducts an adequate investigation. At this point in time, *there is no evidence* before the Court *that the defendant's acquittal on grounds of mental disease or defect was procured by fraud or design.* This is a case where both parties and the Court apparently trusted the opinion of a single expert witness and acted in accordance with that. There was no apparent reason for the state to investigate the matter further. As a practical matter, the defendant was seeking to volunteer himself into custody for treatment. The State saw a dangerous defendant seek custody which would protect the public. What more could the State expect even if it was successful in obtaining a conviction? There was a prior case where the same conclusion had been reached by the same psychiatrist. From the report of the psychiatrist, his examination ap-

peared thorough. There was no apparent reason to doubt his statement and no reason appeared until much later when two other psychiatrists testified that in their opinion, the first psychiatrist had misdiagnosed the case.

"Under such circumstances, the result is the same as if an intentional fraud had been perpetrated on the Court. The State had not been given a true opportunity to present an opposite case.

"While the record discloses no actual fraud upon the Court, the elements required to find the existence of constructive fraud are present.

"Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests. Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.

"In this case, *the Court may have been deceived by erroneous expert opinion offered in good faith.* Two psychiatrists have so stated. *Under such circumstances, constructive fraud upon the court does exist* and the judgment of acquittal should be vacated and *the defendant should be required to stand trial* to determine if he is in fact guilty of the alleged felonies.

"Counsel for the state has made another strong point. He has asserted that insofar as the statute Idaho Code 18–213 permits an acquittal on grounds of mental disease or defect excluding responsibility without a jury trial, it is unconstitutional. It should be noted that whenever a person is acquitted on these grounds, he must be taken into custody and sent to a state mental institution. As previously stated in this opinion, the statute permits the transmittal of a defendant to such an institution anytime he is charged with a felony and he enters a plea of not guilty by reason of mental disease or defect excluding responsibility and then a psychiatrist finds such to be

the case and files an opinion so stating. The Court under the statute can then proceed to commit the defendant to a state mental institution.

"If either the defendant or the state resisted this, there would be a trial. If the commitment is not resisted by either the defendant or the state, the defendant gets sent off to an institution. This is basically the situation in the case at bar. In fact, in this case, both parties urged the Court to make the disposition made in this case. Thus, in this instance, the commitment of the defendant which resulted from his acquittal by reason of mental disease or defect excluding responsibility is essentially voluntary in character on the part of the defendant and his counsel." (Emphasis added; footnotes omitted.)

The court set the reinstated criminal proceedings for trial in March, 1977, Hightower inexplicably being released on his own recognizance to the special mental health facility at the Idaho correctional institution for further appearance in court.

Prior to trial Hightower moved to dismiss on grounds of double jeopardy and lack of speedy trial. The motions were denied. The district court also refused Hightower's motion for a change of venue premised on a claim of extensive media publicity.

Counsel for Hightower learned on pretrial motions for discovery that several items of physical evidence, gathered by law enforcement personnel during investigation of the 1973 rape and kidnapping charges, had been destroyed by the Ada County Sheriff's office in 1975 upon approval of the Ada County prosecuting attorney's office. Hightower then moved the court to reconsider his motion to dismiss. At the hearing held on February 25, 1976, Hightower argued that the destruction of the evidence was prejudicial to him and required the court to grant his motion to dismiss on either a speedy trial basis or for the reason that "the destruction of evidence by the prosecution constitutes a basic denial of due process . . . ."

The prosecution acknowledged at the February 25, 1976, hearing that its office had approved in 1975 the request of the sheriff's office for permission to destroy physical evidence gathered during investigation of the crimes with which Hightower was charged. The State admitted destroying the victim's panties worn at the time of the alleged rape, pubic hair combings taken from the victim approximately two hours after the rape, hair samples collected by police from the automobile in which the rape occurred, a plastic ballpoint pen allegedly used by the defendant as a weapon against the victim, and an array of photographs from which the victim identified the defendant as her assailant. The State asserted that the evidence was destroyed during routine housecleaning following the State's acquiescence in Hightower's motion for a judgment of acquittal by reason of mental disease or defect which was granted in October 1974. No scientific examination or evaluation of the evidence had been made before its destruction.

On February 26, 1976, the court again denied Hightower's motion to dismiss. A jury trial was held in March 1976 and Hightower was convicted on both counts. Hightower appeals, alleging numerous errors. Holding that the trial court erred in granting the State's motion to reopen the criminal proceedings, we do not consider the other assignments of error.

II.

As stated, the motion to reopen the criminal proceedings was allowed on two grounds: (1) that I.C. § 18–213 is unconstitutional, and (2) that there was a constructive fraud on the court.

A. As to the first ground, our attention is not called to any principle of law which allows the State to acquiesce in the procedure leading to entry of a judgment of acquittal, acquiesce in the involuntary commitment of a defendant pursuant to that procedure, destroy all physical evidence in the case, and much later seek to reopen the case on a challenge of the constitutionality of the procedure under which the defendant

was committed. One text states the general rule on the need for a timely attack on the constitutionality of a statute as follows:

"In general, waiver of a constitutional right or the right to challenge the constitutionality of a statute may be effected, or estoppel created, by deliberate election, by conduct inconsistent with the assertion or exercise of the right, as by any course of conduct which shows an intention to waive any question as to the validity of the statute, or by conduct rendering it unjust to permit the assertion of such a constitutional provision." 16 C.J.S. *Constitutional Law* § 89(b) (1956) (footnotes omitted).

Similarly, this Court held in *People v. Alturas County*, 6 Idaho 418, 422, 55 P. 1067, 1067 (1899), that the State was estopped from challenging the method of enacting a statute because, among other things, of "the long–continued acquiescence in and recognition of the validity of said act."

■■ It is a well established principle, moreover, that this Court "will not pass upon questions of constitutionality until presented in a cause demanding rulings thereon." *Twin Falls Canal Co. v. Huff*, 58 Idaho 587, 599, 76 P.2d 923, 928 (1938). *Accord, Swenson v. Buildings, Inc.*, 93 Idaho 466, 463 P.2d 932 (1970); *Hill v. Schultz*, 71 Idaho 145, 227 P.2d 586 (1951). If the State had doubts as to the constitutionality of § 18–213, it should have mounted an appropriate challenge at the original hearing, long before the judgment of acquittal was entered, before Hightower was committed, and before the evidence was destroyed. Accordingly, the State is barred from making its belated challenge to the constitutionality of § 18–213. *See State v. Hannah*, 120 Ariz. 1, 583 P.2d 888 (1978) (denial of due process to destroy evidence which had a reasonable probability of being material to defendant's guilt or innocence and of being favorable to defendant); *State v. Wright*, 87 Wash.2d 783, 557 P.2d 1 (Wash.1976) (same).

B. The trial court in its memorandum opinion stated that the initial judgment of acquittal was final and res judicata. With this we agree. *See Kraft v. State*, 100 Idaho 671, 603 P.2d 1005 (1979). The trial court further stated that there was no evidence before the court to show that Hightower's acquittal was procured by fraud or design. With this we also agree. However, the trial court then found constructive fraud. With this conclusion we cannot agree.

■ The trial court in finding constructive fraud cited two authorities, *McGhee v. McGhee*, 82 Idaho 367, 353 P.2d 760 (1960), and 37 C.J.S. *Fraud* § 2 (1943). However, neither of these authorities supports the finding of constructive fraud in the present case. Both authorities state that constructive fraud involves a breach of duty. It cannot be argued here that Hightower owed anyone a duty. Regardless of how diabolical or clever a defendant may be, he cannot be held to have committed a constructive fraud merely for invoking the procedure under I.C. § 18–213, acting upon the report of the court's psychiatrist.

■ Dr. Heyrend was appointed by the court; Hightower played no part whatever in this appointment.[4] Nothing prevented the State from contesting Dr. Heyrend's report, or from having other psychiatrists examine Hightower.[5] Hightower did nothing whatever to influence the State's inaction. Nor is there any evidence that Hightower executed an unconscionable plan to improperly influence the court. Only in the conditional release proceeding wherein the two court–appointed psychiatrists disagreed with the first court–appointed psychiatrist did the trial court become imbued with the

---

4. While I.C. § 18–211 provides that the court or the director of the department of health, education and welfare shall appoint the psychiatrist to examine the defendant, § 18–213(2) states that in addition the defendant can have his own psychiatrist. The record here shows that defendant did not exercise this right.

5. I.C. § 18–211 states only that *at least one* psychiatrist shall examine the defendant. Section 18–213 provides that the prosecuting attorney as well as the defendant can request a hearing on the issue of mental disease or defect.

notion that it might have erred in entering the two judgments of acquittal and involuntary commitments. A difference of opinion among experts, with nothing more, falls far short of proving a constructive fraud on the court. The State's motion to reopen was improvidently granted; we reverse the judgment of conviction; we reinstate the judgments of acquittal and orders of commitment.

Reversed and remanded.

DONALDSON, C. J., McFADDEN and BAKES, JJ., and SCOGGIN, J. pro tem., concur.