652 P.2d 655

**James T. NEVEAU, Plaintiff-Appellant, Cross-Respondent,**

v.

**Patsy L. NEVEAU, Defendant-Respondent, Cross-Appellant.**

No. 13896.

Court of Appeals of Idaho.

Oct. 12, 1982.

Bruce H. Greene, Greene & Hunt, P.A., Sandpoint, for plaintiff-appellant, cross-respondent.

Thomas E. Cooke, Priest River, for defendant-respondent, cross-appellant.

**BURNETT, Judge.**

In this case we encounter a wife's alimony claim, drifting in the wake of *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). In *Orr* the United States Supreme Court held unconstitutional, for denial of equal protection, an Alabama statute providing that wives, but not husbands, could receive alimony upon divorce. Because Idaho's then-existing alimony statute [1] similarly discriminated on the basis of sex, the presiding magistrate in this case assumed that *Orr* had torn the wife's alimony claim from its statutory moorings. Accordingly, the magistrate denied alimony based upon the statute, but he cast the wife a rescue line by awarding her the functional equivalent of alimony under general equitable principles.

On appeal from the magistrate division, the district court cut the magistrate's rescue line by deciding that support to a former spouse was strictly a creature of statute. However, the district court cast the wife another rescue line, noting that a gender-neutral "maintenance" statute [2] had been enacted while the appeal was pending, and holding that the new statute could be applied to the wife's claim. The magistrate's equitable award was reversed, but the cause was remanded for consideration of "maintenance." Both parties have appealed the district court's order.

The dispositive issue is whether any rescue line is necessary at all; that is, whether the Supreme Court decision in *Orr* actually requires Idaho's former alimony statute to be declared void. For reasons set forth below, we hold that it does not. Accordingly, we sustain the district court's order reversing the magistrate's equitable award;

---

1. Former I.C. § 32–706 provided, in pertinent part, as follows:

   Where a divorce is granted for an offense of the husband ... the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support as the court may deem just, having regard to the circumstances of the parties respectively;

and the court may, from time to time, modify its orders in these respects.

2. I.C. § 32–705 currently provides, in pertinent part, as follows:

   Where a divorce is granted, for an offense of either spouse, including a divorce granted upon the complaint of the party at fault, the court may grant a maintenance order for the innocent spouse ....

but we modify the district court's instruction on remand, to direct that the alimony claim be reconsidered under the former statute.

### I

Ordinarily, we will not review the constitutionality of a statute unless it is absolutely necessary to the decision of a case. *State v. Hightower,* 101 Idaho 749, 620 P.2d 783 (1980); *Poesy v. Bunney,* 98 Idaho 258, 561 P.2d 400 (1977). In this case, both of the lower courts determined the former alimony statute, I.C. § 32–706, to be void in light of *Orr.* They expressly predicated their alternate grounds of relief for the wife upon this determination. Consequently, the validity of the statute is a threshold question that cannot be avoided.

In *Orr* the Supreme Court termed the Alabama alimony statute "underinclusive" because it excluded males from the class of persons entitled to receive alimony. The Court held that a classification by gender must "serve important governmental objectives and must be substantially related to achievement of those objectives." *Orr,* 440 U.S. at 279, 99 S.Ct. at 1111, *quoting Califano v. Webster,* 430 U.S. 313, 316–17, 97 S.Ct. 1192, 1194–95, 51 L.Ed.2d 360 (1977); *compare State v. Greensweig,* 103 Idaho 50, 644 P.2d 372 (Ct.App.1982). The Court rejected, as a permissible government objective, the reinforcement of a dependent female role model, and observed that the compensatory purpose ascribed to alimony in Alabama could be effectuated without placing burdens solely upon husbands. 440 U.S. at 279–82, 99 S.Ct. at 1111–13. The Court concluded that exclusion of husbands from the right to seek alimony deprived them of the equal protection of the laws, in violation of the Fourteenth Amendment to the United States Constitution.

Applying this analysis to the former Idaho alimony statute, we are constrained to reach the same conclusion. Alimony awards under the Idaho statute have been held to turn upon the "correlative needs and abilities" of the parties. *Shepard v. Shepard,* 94 Idaho 734, 737, 497 P.2d 321, 324 (1972). The "needs and abilities" test does not suggest, and we cannot otherwise ascribe to the statute, an important government objective which requires—or is reasonably served by—a gender-based classification. We hold that former I.C. § 32–706, insofar as it authorized alimony solely for wives, was unconstitutional.

However, a determination of constitutional infirmity does not conclude the case. In *Orr* the Supreme Court refrained from declaring the Alabama statute a nullity. Rather, that case was remanded for the Alabama courts to consider whether the husband's alimony obligation could be sustained on "other grounds of gender-neutral state law." *Orr,* 440 U.S. at 283–84, 99 S.Ct. at 1113–14.

The Supreme Court's deference to the Alabama courts, in determining the ultimate outcome of the case, was derived in part from a modern perception of alternative possible treatments of an unconstitutional statute. Traditionally, unconstitutional statutes were treated as nullities. *See generally* 1 T. Cooley, Constitutional Limitations 382–84 (Carrington 8th ed. 1927). However, this rigid doctrine had its critics. *E.g.,* Note, *The Effect of Declaring a Statute Unconstitutional,* 29 Colum.L. Rev. 1140 (1929). Where a statute was found to violate equal protection by impermissibly excepting a certain class of persons from the burdens or benefits of the statute, three possibilities were suggested: (1) holding the entire statute unconstitutional, (2) excising the unconstitutional exception, or (3) broadening the exception to include a wrongfully excluded class. Note, *The Effect of an Unconstitutional Exception Clause Upon the Remainder of a Statute,* 55 HARV.L.REV. 1030 (1942). The third course was encouraged because it "will usually approximate the legislative intent more closely than excision or complete destruction. . . . The important consideration is and should be what the legislature would have done had it been apprised of the partial invalidity." *Id.* at 1035–37.

The view that a statute in conflict with the guaranty of equal protection might be

broadened, rather than nullified or mutilated by excision, found its fullest expression in a concurring opinion by Justice Harlan in *Welsh v. United States*, 398 U.S. 333, 344, 90 S.Ct. 1792, 1798, 26 L.Ed.2d 308 (1970). In that case the court reviewed the Selective Service Act and held that individuals adhering to deeply held moral, ethical or religious beliefs could not be excluded from the class of persons entitled to conscientious objector status simply because their beliefs were derived from sources other than traditional religious training and conviction. Justice Harlan concurred in extending conscientious objector status to such persons, rather than excising the conscientious objector exemption from the Act, or abrogating the entire Act as repugnant to the establishment of religion clause of the First Amendment. Treating both the abrogation and excision alternatives as forms of nullification, he stated:

> Where a statute is defective because of underinclusion there exist two remedial alternatives: a court may either declare it a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by exclusion. [398 U.S. at 361, 90 S.Ct. at 1807.]

Justice Harlan was careful to note that this choice of alternatives should not be confused with the familiar principle that a statute will be construed, if possible, to avoid a constitutional question. He lay great emphasis upon his belief that the Selective Service Act could not reasonably be construed to avoid the issues posed by the establishment and equal protection clauses. He entertained no doubt that the extension alternative went beyond mere statutory construction and required a court to enlarge or to change the language of a defective statute.

> When a policy has roots so deeply embedded in history, there is a compelling reason for a court to hazard the necessary statutory repairs if they can be made within the administrative framework of the statute and without impairing other legislative goals, even though they entail,

not simply eliminating an offending section but rather building upon it. [398 U.S. at 366, 90 S.Ct. at 1810.]

Justice Harlan's views later were echoed by the Supreme Court in *Orr*, where the Court said:

> In every equal protection attack upon a statute challenged as underinclusive, the State may satisfy the Constitution's commands either by extending benefits to the previously disfavored class or by denying benefits to both parties (e.g., by repealing the statute as a whole). [440 U.S. at 272, 99 S.Ct. at 1108.]

More recently, in *Califano v. Westcott*, 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979), the Supreme Court adverted to a number of federal cases where it had approved the use of the extension alternative, and said that these cases suggested strongly that such action was within the remedial capacity of the federal courts. 443 U.S. at 89–91, 99 S.Ct. at 2663–64.

The Idaho Supreme Court also has sanctioned use of the extension alternative. In *Harrigfeld v. District Court*, 95 Idaho 540, 511 P.2d 822 (1973), a state statute fixing the age of majority at eighteen for females, but at twenty-one for males, was held to deny males equal protection. Rather than nullify the entire statute, or excise that portion pertaining to males, the Court extended the rights and powers conferred by the age of majority to the previously excluded class of males between the ages of eighteen and twenty-one.

Justice Harlan's opinion in *Welsh*, the cases summarized in *Westcott*, and the Idaho Supreme Court's decision in *Harrigfeld* all point to the underlying purpose of a statute as the principal criterion governing the choice between nullification and extension. Where nullification would defeat an important legislative policy, but extension would be feasible and consistent with the policy, the cases readily embrace the extension alternative. Conversely, where broadening an exception to a general statute would defeat an important policy embodied by the general statute, excision may be

preferred. *See, e.g., Suter v. Suter,* 97 Idaho 461, 546 P.2d 1169 (1976) (excising a statutory provision that wives' income during separation is separate property, and declining to extend the provision to husbands because such action would be inconsistent with the general presumption that all earnings during marriage are community property).

The choice of alternatives in the alimony context requires us to weigh conflicting policies. Nullification of the former Idaho alimony statute would deprive women whose claims are based upon that statute of a right which the legislature plainly intended them to have. Such deprivation would contravene the compensatory and rehabilitative policy apparently embodied in the statute. *See Shepard v. Shepard, supra.* On the other hand, extending the benefit of the statute to men would impose a correlative burden, not upon a vague and undefined segment of society, but specifically upon the wives of those men who might qualify to receive alimony. Prior to enactment of the gender-neutral statute which succeeded I.C. § 32–706, the legislature arguably had evinced a policy of protecting wives from the burdens of alimony.

Resolution of this conflict turns upon the importance assigned to the competing policies. The compensatory and rehabilitative policy serves the cognizable and important objectives of alleviating misfortune suffered during marriage and providing the wife an opportunity to become economically secure, perhaps self-sufficient, after marriage. In contrast, a purported policy of protecting women from the burdens of alimony is deficient in origin, and its application is misdirected. It arises from the stereotype of the dependent woman, discredited in *Orr;* and its protection is meaningful only to those women who in fact are not dependent, and who might be faced with alimony claims by their husbands.

On balance we view the compensatory and rehabilitative policy to comprise the dominant public purpose underlying the former alimony statute. Had the legislature been confronted, before this case began, with the partial invalidity of I.C. § 32–706, we conclude that it would have preserved the dominant public purpose by removing the statute's gender bias. This conclusion is, of course, consistent with the legislature's later replacement of I.C. § 32–706 with our present gender-neutral "maintenance" statute. It is also consistent with the action taken in Alabama upon remand in the *Orr* case. *See Orr v. Orr,* 374 So.2d 895 (Ala.Civ.App.1979), *writ denied,* 374 So.2d 898 (Ala.1979). There the Alabama Court of Appeals extended the alimony statute to include husbands, rather than nullifying the entire statute. Finally, our conclusion is consistent with the results reached in most other states where equal protection attacks have been made upon gender-based alimony or spousal support statutes. *E.g., Beal v. Beal,* 388 A.2d 72 (Me.1978); *Commonwealth v. Stein,* 487 Pa. 1, 406 A.2d 1381 (1979); *Peters v. Narick,* 270 S.E.2d 760 (W.Va.1980). *Cf. Childs v. Childs,* 69 A.D.2d 406, 419 N.Y.S.2d 533 (1979) (extending to both sexes the benefits of a gender-based statute governing attorney fees upon divorce). *But cf. Sweeney v. Sweeney,* 267 Ark. 595, 593 S.W.2d 21 (1980) (choosing the nullification approach without discussion of the extension alternative).

Accordingly, we deem the extension alternative to be preferable to nullification of former I.C. § 32–706. We hold that the proper remedy for the constitutional defect in the statute is to extend to husbands the right to receive alimony when the other requirements of the statute are satisfied. This remedy leaves intact the wife's right to claim alimony under the statute in the present case.

II

Because the magistrate deemed the statute to be a nullity, and attempted to make a spousal support award upon equitable principles, he had no occasion to conclude, as a matter of law, whether the alimony requirements of former I.C. § 32–706 had been satisfied. However, the magistrate did make findings from which such a conclusion could be drawn. He found that the

husband exhibited "infidelity" during the marriage and that—in view of the respective needs and abilities of the parties—the wife should receive a scheduled series of diminishing monthly payments over a period of ten years. On appeal, the husband contends that the magistrate made a finding of "adultery" which was not adequately supported by the record. He urges that the evidence was not "clear and conclusive" on this issue.

We believe the husband incorrectly characterizes the issue. The decree of divorce in this case was entered by stipulation, upon the ground of irreconcilable differences, shortly after the pleadings were filed. Questions concerning alimony and community assets were reserved for later determination. The magistrate's finding of "infidelity" was set forth in a subsequent order which awarded the monthly support payments to the wife.

To buttress his contention that "clear and conclusive" evidence was required in this case, the husband relies upon Idaho cases where divorces were granted upon the ground of adultery. *See Brammer v. Brammer,* 93 Idaho 671, 471 P.2d 58 (1970); *Leonard v. Leonard,* 88 Idaho 485, 401 P.2d 541 (1965); *Rice v. Rice,* 46 Idaho 418, 267 P. 1076 (1928); *Brown v. Brown,* 27 Idaho 205, 148 P. 45 (1915). This is not such a case. We deem the "clear and conclusive" standard of evidence to be inapposite here. Moreover, the rationale implicit in the cases cited is that "clear and conclusive" evidence of adultery is necessary in order to ascertain what particular conduct has been put at issue. *Brammer,* 93 Idaho at 674–75, 471 P.2d at 61–62; *Leonard,* 88 Idaho at 490–91, 401 P.2d at 544; *Rice,* 46 Idaho at 422, 267 P. at 1077–78; *Brown,* 27 Idaho at 210–11, 148 P. at 45–46. In this case, the husband's alleged misconduct, giving rise to the award of payments to the wife, was plainly identified.

The wife's evidence showed that she dropped out of high school as a sixteen-year-old sophomore to get married. The husband was then working as a laborer for a lumber company and had two young children by a previous marriage. The wife became, in effect, the caretaking mother of these stepchildren. During the twenty-five year marriage, she worked intermittently as a florist and as a cook, but developed no permanent job skills. The husband became a lumber business executive. Several months before the entry of the divorce decree, the husband moved from the family home and lived with another woman.

Former I.C. § 32–706 allowed an award of alimony to the wife for an "offense" of the husband. The statute had been construed to authorize an award of alimony in an amount deemed just, when the husband was not free from fault. *Shepard v. Shepard, supra; Saviers v. Saviers,* 92 Idaho 117, 438 P.2d 268 (1968). The magistrate here found infidelity. This finding is supported by substantial and competent evidence. It is not clearly erroneous, and it will not be disturbed on appeal. I.R. C.P. 52(a). It remains for the magistrate, on remand, to determine whether the husband's infidelity constituted "fault" justifying an award of alimony under the statute.

Because we have held former I.C. § 32–706 to apply in this case, the district court's order, setting aside the magistrate's "equitable" award of spousal support, is affirmed. However, upon remand the district court shall direct the magistrate to determine from the evidence—and from the findings already of record—whether the requirements for alimony under the statute have been satisfied. A final judgment shall be entered accordingly.

Costs to respondent, cross-appellant. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.