691 P.2d 773

**Mary Ann ZIEGLER, aka Mary Ann Co-laluca, Plaintiff-Respondent-Cross Appellant,**

v.

**Earl Henry ZIEGLER, Defendant-Appellant-Cross Respondent.**

No. 14464.

Court of Appeals of Idaho.

Jan. 31, 1985.*

Petitions for Review Denied April 9, 1985.

* Editor's Note: The Court of Appeals' opinion dated Oct. 29, 1984 was withdrawn and reinstated and reissued on Jan. 31, 1985.

528

**530**

Earl Henry Ziegler, Spokane, Wash., pro se.

James R. Michaud, Coeur d'Alene, for plaintiff-respondent-cross appellant.

## ON DENIAL OF PETITIONS FOR REHEARING.

This opinion supersedes our prior opinion issued September 4, 1984, which is hereby withdrawn.

PER CURIAM.

This case is before us on appeal and cross-appeal in a divorce action. The divorce proceeding was heard by a magistrate. Both parties appealed from the magistrate's judgment to the district court. On that appeal, the husband sought review of (a) the magistrate's finding that conduct of the husband toward the wife constituted extreme cruelty; (b) the magistrate's award of custody of the minor children to the wife; (c) the magistrate's award of alimony to the wife; (d) the magistrate's conclusion that the community was entitled to reimbursement for improvements to the husband's separate real property; and (e)

an award to the wife of personal property which had been repossessed during trial. The wife cross-appealed to the district court, challenging the authority of the magistrate to limit the residency of the parties' children to an area within a radius of 100 miles of Coeur d'Alene, Idaho and ordering that the children not be taken from that area without prior permission from the court. The wife also petitioned for review of an order of the magistrate holding her in contempt of court for removing the children to Georgia without permission from the court.

In its appellate capacity, the district court affirmed the magistrate's judgment and the contempt order. The district court also determined, within its original jurisdiction, four motions filed by the parties during the pendency of the appeal. These were (a) the husband's motions (1) to change custody of the children, (2) to terminate the order for payment of alimony, (3) for an order prohibiting issuance of writs of execution to collect accrued alimony and child support payments; and (b) the wife's motion to modify the decree to eliminate the 100 mile residency restriction. The district court entered findings of fact and conclusions of law determining each of these motions. In sum, the court terminated the alimony requirement and entered an order prohibiting any further execution to collect either accrued alimony and child support, or future child support; and the court denied all other motions. After notice of appeal to this Court was filed, the district court entered an additional order modifying the prohibition against collecting child support and accrued alimony. That order allowed the wife to post $300 with the court as "security" in lieu of a fine imposed by the magistrate for contempt of court, in order to obtain writs of execution "to collect any amounts of child support or alimony now in arrears and unpaid or any amounts of child support that may hereafter in the future become unpaid" without further order of the court.[1]

1. It is not disputed that the wife posted the "security" and has continued to collect support

by execution on the husband's military retire-

Both parties further appeal, seeking review of some of the district court's dispositions. We affirm the district court in all respects, except as to the magistrate's order holding the wife in contempt of court. We vacate that contempt order.

■ Our standard of review is well settled. Where a district court sits as an appellate court for the purpose of reviewing a magistrate's judgment, the district court is required to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and conclusions of law. If these findings are so supported and the conclusions follow therefrom, and if correct legal principles have been applied, then a district court's decision affirming the magistrate's judgment will be upheld on further appeal. *Ustick v. Ustick,* 104 Idaho 215, 657 P.2d 1083 (Ct.App.1983).

■ In respect to the motions determined by the district court, its findings of fact will not be set aside unless clearly erroneous or not supported by substantial and competent evidence. I.R.C.P. 52(a); *Jensen v. Bledsoe,* 100 Idaho 84, 593 P.2d 988 (1979). If the district court's findings are supported by the evidence then we will determine whether the district court's conclusions of law follow from the facts and if correct legal principles were applied.

We will now discuss, in turn, each of the parties' contentions on this appeal. We begin with the issues raised by the husband on appeal from the district court's affirmance of the magistrate's judgment and decree of divorce.

I

*a. Custody of the children.*

At the conclusion of the divorce proceeding, the magistrate entered detailed findings of fact concerning the relative suitability of each party to be a custodian of the children. The magistrate concluded that the wife was the more suitable and awarded custody of the children to her, subject to

specified visitation rights in the husband. We have reviewed the record presented to the magistrate. The magistrate's findings are supported by substantial, competent evidence.

■ In awarding custody, the court is required to provide for the custody of children as may seem necessary or proper in the best interests of the children. I.C. § 32–717; *Schmitt v. Schmitt,* 83 Idaho 300, 362 P.2d 884 (1961). The care, custody and education of minor children is committed to the discretion of the trial court, and, unless there is an abuse of such discretion, the judgment of the court relative thereto will not be disturbed. *Maudlin v. Maudlin,* 68 Idaho 64, 188 P.2d 323 (1948).

■ The husband argues that the decision of the magistrate to award custody of the children to the wife was "gender based." He submits statistics showing that in the vast majority of cases, custody of minor children are awarded to mothers, not fathers. He also suggests that "the constitutional rights of [the] children regarding access to both parents" have been overlooked.

However, there is no indication in the record that the magistrate awarded custody to the wife, in this case, on the basis of gender. The magistrate's findings, based on evidence presented at trial, demonstrate that the magistrate thoroughly considered the relationships of both parents to their children and the care that each parent has been and will be able to provide for the children. We are not persuaded that the magistrate made his decision based on gender. Rather, the court stayed within the guidelines of I.C. § 32–717. Moreover, as explained more fully below, the magistrate endeavored to maximize the children's access to both parents by ordering the custodial spouse not to move from the Coeur d'Alene area without court authorization. The determination of custody by the magistrate, based upon substantial evidence and application of proper legal principles, will not be disturbed.

ment benefits throughout the pendency of these proceedings.

■ The husband also suggests that an attorney should have been appointed to protect the interests of the children. We do not find in this record, however, where any application was made to secure appointment of an attorney for the children nor does the record indicate that the court should have done so *sua sponte.* We hold no error occurred in this regard.

### b. Property award.

The husband next urges that the magistrate erred in determining there was a community interest in the family home. The magistrate found that the home was the separate property of the husband, having been acquired through a loan obtained on the separate credit of the husband which loan was paid for largely with the husband's separate funds. The trial court also found that community funds had been expended for improvements which enhanced the value of the home. The court concluded that although the property was the husband's separate property it was

> subject to a right of reimbursement in the community in the sum of $11,268 for the community contribution to the enhanced value due to improvements and the sum of $692.00 for the community contribution toward reduction of the principle [sic] balance of the obligation against the property, for a total community reimbursement of $11,960.00. [Blank completed in original.]

The magistrate's findings and conclusions were upheld by the district court. We also affirm.

■ The evidence shows the home had a value of $31,250 when it was acquired. It had a value of $50,000 at the time of the divorce. The magistrate found, on the evidence presented at trial, that the increase in value was due in part ($7,482) to inflation and in part ($11,268) to community labor and funds. The magistrate further found that $692 of community earnings had been used to make payments on the principal of the loan upon the house. After reviewing statutory and case law relating to separate and community property, in the

context of the facts of this case, the magistrate applied a rule stated in *Suter v. Suter,* 97 Idaho 461, 465, 546 P.2d 1169, 1173 (1976):

> [W]hen community efforts, labor, industry, or funds enhance the value of separate property, such enhancement is community property for which the community is entitled to reimbursement.

We uphold the magistrate's judgment that the community is entitled to reimbursement for the enhanced value of the husband's separate property resulting from community labor or expenditure of community funds.

### c. Alimony.

The husband contends the magistrate erred in awarding alimony to the wife. He attacks this determination in two respects. First, he contends the former Idaho statute (in effect at the time the alimony award was made in this case), allowing an award of alimony in favor of the wife, is unconstitutional as gender discrimination, citing *Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). Second, he maintains it was improper to award alimony where his sole income, at the time of the divorce, was military retirement pay. In this regard he cites *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) which holds that military retirement benefits are separate property and cannot be treated as community property in a divorce action.

■ In respect to the husband's first point, cases decided while this appeal was pending are dispositive. In *Murphey v. Murphey,* 103 Idaho 720, 653 P.2d 441 (1982) our Supreme Court held that although the Idaho alimony statute—as it existed when the divorce in the instant case was granted—was unconstitutional because only a wife (but not a husband) could be awarded alimony, the constitutional defect could be remedied by judicial construction extending the application of the statute to cover married persons of both sexes. To the same effect, see our opinion in *Neveau v. Neveau,* 103 Idaho 707, 652 P.2d 655 (Ct.App.1982). Applying the Idaho statute

as broadened by *Murphey* and *Neveau* to this case, we hold that the award of alimony to the wife was not unconstitutional.

In regard to the husband's second point—concerning the separate property nature of the military retirement benefits—the issue is not whether those benefits could be divided between the parties in a divorce action or whether they belonged solely to the husband as separate property. Rather, the issue is whether the magistrate could require the husband to pay alimony when the husband's sole income allegedly was separate property.

 The husband does not contest the magistrate's determination that the wife was in need of support by way of alimony or that she had shown a right to alimony in this case. Nor does he contest the appropriateness of the amount awarded by the magistrate. In awarding alimony, a court should give due consideration to the correlative needs and abilities of the parties and the equity of the situation. *Shepard v. Shepard*, 94 Idaho 734, 497 P.2d 321 (1972). We believe the source of the funds required to satisfy that obligation is immaterial. Indeed, following a divorce and until remarriage of the spouse who is obligated to pay the alimony, the source of those funds—in Idaho—always would be separate property. We uphold the magistrate's award of alimony.

## II

We turn next to the wife's cross-appeal from the district court's affirmance of the magistrate's judgment. The wife's sole contention concerns the imposition by the magistrate of a condition relating to the children's residency.

At the time of the divorce, the parties were domiciled in Kootenai County, near Coeur d'Alene, Idaho. The wife's parents resided in Georgia. On several occasions during the parties' marriage and particularly on occasions when the parties were embroiled in domestic disputes, the wife had gone to Georgia to be near her parents. From the evidence presented at trial the magistrate found:

16. There has been some indication that [the wife] if awarded custody of the children may leave the northwest to return to her family's residence in Georgia—there has also been some indication that [the husband], if not awarded the custody of the children, given an opportunity would take the children and depart with them despite any court order.

. . . .

19. In view of the fact, as indicated above, that both parties have given some indication they may depart this area, it is the Court's opinion that both the right to custody in [the wife] and the right to visitation in [the husband] should be subject to the following limitations:

a. Neither party shall remove the children from the United States without a prior court order.

b. Neither of the parties shall take the children to reside in any area beyond a radius of one hundred (100) miles from Coeur d'Alene, Idaho without a prior court order.

The wife contends the imposition of the 100 mile restriction is improper for two reasons. First, she alleges that the limitation on where she, as custodian, can reside with the children is unconstitutional as an impairment of her right of freedom to travel. Second, she insists that this condition was imposed without prior notice to her, resulting in a denial of due process through deprivation of notice and opportunity to be heard on the issue before the court imposed that limitation. We are not persuaded by her arguments.

### a. *Constitutionality of residency limitation.*

 Although it never has been established from which constitutional provisions the right to travel derives, the United States Supreme Court has long recognized the fundamental right of citizens to travel interstate. *See Jones v. Helms*, 452 U.S. 412, 101 S.Ct. 2434, 69 L.Ed.2d 118 (1981). When analyzing right to travel challenges to state legislation, the Court has used the

"compelling state interest" test when equal protection or substantive due process is claimed to be the source of the right. *See Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). A classification that infringes on the fundamental constitutional right to travel is invalid unless "shown to be necessary to promote a *compelling* governmental interest." [Emphasis in original.] *Id.* 394 U.S. at 634, 89 S.Ct. at 1331.

We have found only one similar case addressing the issue raised by the wife regarding her right to travel. A Kansas court of appeal recently determined that the right to travel may be affected by the needs of the children involved in a custody dispute. In *Carlson v. Carlson,* 8 Kan. App.2d 564, 661 P.2d 833 (1983), a modified custody decree awarded custody to the plaintiff "for so long as she resides in McPherson County Kansas, otherwise custody is placed with defendant." 661 P.2d at 835. Without specifically discussing whether a "compelling governmental interest" test should be utilized, the Kansas appellate court upheld the decree. The court stated that the legitimate state interest in restricting the residence of a custodial parent to further the best interests of a child had priority over the parent's right to travel. Noting that the plaintiff's right to travel was "limited only by her desire to retain her status as the custodial parent," the court held that "a divorced parent to whom custody of minor children has been entrusted ... may be required to forego or forfeit some rights to custody or visitation, as the case may be, consistent with the best interests and welfare of the children and the rights of the other parent." 661 P.2d at 836.

 In analyzing this issue in the instant case the district court, on appeal, rendered a well reasoned decision. We quote it verbatim and adopt it in further explanation of our holding:

> *Shapiro v. Thompson,* supra, stands for the proposition that there must be a compelling state interest to justify restriction of the constitutional right of travel. In my opinion there was such a compelling state interest in this case.
>
> In virtually every case of divorce where young children are involved they are the innocent victims. There is no dispute that the best interest of the children dictates that they should have the love, support, guidance and companionship of both their parents. Such affords the greatest probability that the child will mature into a happy, useful, law-abiding and productive citizen capable of forming a part of a strong society and producing progeny in a like mold. The courts in divorce and child custody situations cannot guarantee these desirable results but it is the responsibility of the courts to take appropriate action to foster and promote such results when it appears that the parents because of the animosities between them are not going to cooperate in an effort to attain such goals. Providing and assuring the maximum opportunities for parental love, guidance, support and companionship is a compelling state interest that in my opinion warrants reasonable interference with the constitutional right of travel when necessary.
>
> The evidence in this case clearly supports the trial court's determination that some reasonable interference with unrestricted rights of travel was necessary. There was great acrimony and bitterness between the parties; both parties expressed very strong attachment and desire for the children; the parties were unable to meet in any type of face to face confrontation without acrimony and bitterness; both parties at times had made expressions indicating thoughts of removing themselves and the children beyond the jurisdiction of the Court and beyond practical means for the other parent to visit with the children. These facts would certainly support the trial court's inference and conclusion that there was danger that either of the parties might take the children and flee thus depriving the other parent of reasonable visitation and depriving the children of

the parental love, affection, support, guidance and companionship to which they were entitled.

Finally, plaintiff complains that the restriction was overly broad and that the Court could only impose the least restrictive measures necessary to satisfy the compelling state interest. Accepting, without deciding or holding, that such proposition is true the decree herein passes constitutional muster. The wording of the trial court's decree does not restrict plaintiff's right of travel for temporary purposes such as vacation, business or visitation of relatives. Under the trial court's decree plaintiff would be perfectly at liberty to travel as she saw fit either taking the children with her or leaving them at their residence in Idaho. Plaintiff herself would be at liberty to change her place of residence without permission or order of the Court at any time she saw fit if she should decide that it was not necessary that the children reside with her. The only restriction the trial court imposed was that the place of residence of the children not be changed to a point beyond a radius of 100 miles from Coeur d'Alene without a prior Court order.

Plaintiff contends that in the absence of a finding that the removal of the place of residence would prejudice the children's rights or welfare the Court had no right to prohibit the custodial parent from removing the children to wherever they might wish. It is true that the trial court made no such express finding of fact. However, such a finding is implicit in the Court's conclusions and ruling and is amply supported by the evidence of record.

Finally, plaintiff contends that it would have been less restrictive and therefore that the trial court should have established two or more different schedules of visitation depending upon the distance that the parties live apart. However, the realities of the situation need to be considered in that regard. As the record amply demonstrates, these parties had not been able to in any way amicably agree about visitation of the children. The trial court had therefore found it necessary to spell out a very detailed schedule of visitation. This was a schedule that obviously would not be practical or operable if the parties lived more than 100 miles apart. It was uncertain if or when either of the parties might change their place of residence. It was uncertain as to where any such new residence might be. Under these circumstances the trial court would have no information concerning the financial means and practical travel necessities that would be involved to accomplish visitation. Therefore, to proceed as plaintiff contends would have required the trial court to prepare virtually an infinite number of possible visitation orders depending upon such variables. Since the trial court would have been proceeding upon sheer speculation, the trial court's decision to require the parties to come back to court at the time a change of residence was sought is by far the better course of action.

It is the conclusion of this Court that the restriction requiring the parties to seek a Court order before changing the place of residence of the children was based upon a compelling state interest justifying interference with the constitutional right of free travel and by its terms was not arbitrary, capricious or unduly restrictive. It is therefore affirmed.

In addition to the district court's view, we believe it is significant to note that the magistrate did not flatly prohibit the parties from moving more than 100 miles from Coeur d'Alene. The magistrate simply required that such a move be authorized by a "prior court order." The manifest purpose of this requirement was to enable the court to assess the impact of a proposed move upon the parties and the children, and to enter whatever order, if any, might be needed to protect the children's best interests and to minimize the adverse effect upon the parties' custodial and visitation rights.

### b. Procedural due process.

■ Next the wife contends the residency limitation was imposed by the magistrate without advance notice to the parties or an opportunity to be heard on that issue. We disagree. The evidence at trial supports the magistrate's finding that there was an "indication" the parties might move from the Coeur d'Alene area. In light of the prior conduct of the parties in moving about from state to state we believe it should have come as no surprise that the trial court would consider imposing a residency restriction in determining the custody issue. This determination, as noted, was clearly within the authority of the court under I.C. § 32–717. Moreover, in response to the residency limitation announced by the court in its memorandum decision, and before the divorce decree was entered, the wife moved to amend "the Findings of Fact and Conclusions of Law embodied in the Memorandum Opinion" by deleting the residency restriction, or in the alternative for an order permitting her to reside more than 100 miles from Coeur d'Alene "upon compliance with reasonable, specific and predetermined court imposed conditions." A hearing was held on her motion, with the wife being present.

At the outset of that hearing, the parties stipulated that the magistrate's memorandum decision would constitute findings of fact and conclusions of law in the case because, until that time, no formal findings or conclusions had yet been entered. With that accomplished, the court then proceeded to hear the wife's motion. The wife sought permission to present additional testimony beyond that which already had been given at trial. The court refused to hear additional testimony, and ruled on the wife's motion, on the following basis.

First, the magistrate treated the wife's request to delete the residency restriction as an "objection" to a conclusion of law. The wife's counsel agreed with the court's characterization, stating that "the first request in the motion is—relates only to issues of law and no testimony should be heard on that score, . . . ." The court ad-

hered to its earlier conclusion imposing the residency restriction and denied the motion to amend. In this regard we conclude the magistrate did not err.

Next, the magistrate considered the wife's alternative request—to allow her to reside more than 100 miles from Coeur d'Alene upon predetermined conditions—as an petition to modify a decree. He refused to entertain testimony on that issue, and denied the alternative request, holding that such an application was premature because no judgment or decree had yet been entered. Although the decree was thereafter entered—two days following the hearing on the wife's motion to amend—the wife did not renew her request to modify the decree, but rather filed her appeal to the district court. Considering all of these circumstances, we hold that the magistrate's rulings were correct and that the wife was not deprived of procedural due process by the inclusion of the residency restriction in the divorce decree.

### III

We address next the issues raised on this appeal regarding disposition by the district court, exercising original jurisdiction, of matters raised by motion during the appeal from the magistrate division. We discuss first the issues raised by the husband. The husband only appeals from two adverse rulings by the district court. The first concerns a motion by the husband to modify the divorce decree by changing custody of the children from the wife to the husband. The second relates to collection of past due alimony and child support.

### a. Change of custody.

■ The decree of divorce in this case was entered by the magistrate on August 11, 1978. On August 13, without seeking a court order, the wife moved to Georgia and took the children with her. They have lived there throughout these proceedings. In September 1978, the husband filed his notice of appeal from the magistrate's judgment. In January 1979, while this appeal was pending, the husband successfully

prevailed on a court in the state of Georgia to accept, adopt and "domesticate" the Idaho judgment and decree of divorce as a Georgia judgment. Proceedings were thereafter held in Georgia wherein both parties sought orders holding the other in contempt of court for violation of the judgment and decree. The husband also requested a change of child custody in Georgia, which was denied.

Because the Georgia court refused to modify the decree, the husband then filed a motion in Idaho requesting the district court below to change custody. The district court denied the husband's request. The court concluded that under the Uniform Child Custody Jurisdiction Act, I.C. § 32–1101 through § 32–1126, Idaho was no longer the convenient forum to consider questions of custody of the children. The court held that, because the courts of Georgia—at the invitation of the husband—had assumed jurisdiction by adopting the Idaho judgment as a Georgia judgment, and because the children then resided in Georgia with their mother, the courts of Georgia would be the convenient forum for considering the interests and welfare of the children. The court noted also that the husband no longer resided in Idaho; he had become a resident of Spokane, Washington.

Idaho Code § 32–1107, part of the Uniform Child Custody Jurisdiction Act, contains guidelines for deciding whether jurisdiction should be declined in custody cases. It provides:

(a) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

(b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

(1) If another state is or recently was the child's home state;

(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate; and

(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 32–1101, Idaho Code.

The purposes, referred to in I.C. § 32–1107(c)(5), are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment

and of secure family relationships for the child;

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) Avoid relitigation of custody decisions of other states in this state insofar as feasible;

(7) Facilitate the enforcement of custody decrees of other states;

(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(9) Make uniform the law of those states which enact it.

In its decision declining to grant the husband's request for change of custody, the district court stated reasons consistent with the guidelines in I.C. §§ 32–1107 and 32–1101. We believe the court considered all relevant factors. We affirm its decision to decline jurisdiction over proceedings to change the custody of the children.

■ Moreover, the district court also considered the application of the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. 1738A, in so far as it relates to modification of custody decrees. That law provides that no state shall modify any child custody determination of another state unless the court has jurisdiction *and* one of five other tests are met: (1) six-month residency of the child immediately preceding the request for change of custody; (2) no other state would have jurisdiction because of such residency and it is in the best interest of the child to assume jurisdiction because the child and one contestant have significant connection with the state; (3) the child is physically present in the state and has been abandoned or mistreated or abused; (4) no other state has jurisdiction or another state has declined to exercise jurisdiction on the basis of non-convenient forum; or (5) the court has con-

tinuing jurisdiction because original jurisdiction was made consistently with the provisions of this section (28 U.S.C. § 1738A(d)) and the state remains the residence of the child or any contestant. Because the state of Georgia had acquired jurisdiction over the judgment in this case, and finding that no other tests set forth in the Parental Kidnapping Prevention Act were met, the district court refused to modify the custody provisions of the decree. We uphold the court's determination.

### b. Collection of accrued alimony and child support.

Following entry of the judgment and decree of divorce the husband refused to voluntarily pay the alimony and child support as ordered. The wife then obtained writs of execution, as each amount came due, and garnished the husband's military retirement benefits. According to the arguments of the parties presented to us on this appeal, the proceeds of those executions were turned over to the wife's attorney. He retained a portion for his fee, by agreement with the wife, and remitted the balance to her. In district court, the husband moved for an order to prohibit such action, contending that his benefits should be exempt from execution. Upon consideration of the husband's request, the district court terminated the alimony requirement, based upon a change of circumstances of the parties. Also, because the wife had been found in contempt of court both by the magistrate in Idaho and by a court in Georgia as a result of her removal of the children from Coeur d'Alene in violation of the divorce decree, the district court ordered that no further writs of execution would issue to collect either past due alimony and child support or child support accruing in the future until the wife purged herself of the contempt.[2] The district court otherwise found no error in the executions on the husband's military retirement benefits.

---

2. The wife has not appealed either from the order terminating alimony or from the order prohibiting further executions. Also, as noted earlier in this opinion, the district court entered a subsequent order allowing the wife to obtain further writs of execution to collect child support and past due alimony, upon posting the sum of $300 with the court.

On appeal the husband still maintains the execution process was improper. In the district court he raised four questions. First, he contended it was improper for the county to utilize a constable rather than the sheriff to process the writs of execution. Second, he argued the levying officer had no authority to execute on property (the military retirement benefits) outside of Kootenai County. Next he asserted that federal law insulates military retirement pay from execution. Finally, he claimed it was improper for the wife's attorney to receive money due to the wife for alimony or child support. He insisted that the constable should have turned the money over to the clerk of the court, who then should have forwarded it directly to the wife.

 The district court answered the husband's contentions as follows. The court determined that I.C. § 31–3002 allowed the use of constables to process writs of execution. The court concluded that federal military retirement pay was subject to execution for child support and alimony, and that the levy on that pay, occurring outside of Kootenai County, was not improper. We agree. *See* 42 U.S.C. §§ 659(a) and (b). The court further held it was not unlawful or improper for the constable to remit the amounts collected on the unpaid judgment to the wife's attorney. The court stated:

> The constable has in each case made a full and complete return to the Court showing the amount of money he collected, the deduction of his fees and the net amount paid over to plaintiff's attorney for satisfaction of the unpaid judgment. When the statutes speak of a return this is what they mean. It does not mean physically surrendering the money to the Court but rather filing, as has been done here, a report of the Sheriff's or Constable's actions and the net result thereon so far as it pertains to satisfaction of the judgment the officer was directed to collect.

 The husband makes an additional argument not posed to the district court. He contends that execution upon his military retirement benefits is not proper under § 10 U.S.C. 1408, which was enacted by Congress in 1982 while this appeal from the district court was pending. Section 1408 is part of the Uniformed Services Former Spouses Protection Act adopted to alleviate the inequities created by the decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) (discussed *supra* in Part IC of this opinion). Section 1408 directs the payment of military retirement benefits to the member's spouse or former spouse in compliance with a "final" court order. 10 U.S.C. § 1408(a)(2) and (d)(1). The husband argues that so long as the instant case is pending on appeal, the magistrate's decree of divorce ordering the husband to pay child support is not a "final" order to which his military retirement benefits may be subjected.

We believe the husband's position is in error. The decree in this case does not purport to make any distribution or division of the husband's military retirement benefits. Neither does the decree order that the child support be satisfied from those benefits. The order simply requires the husband to pay the support, without designating the source of payment. We believe that section 1408 applies only when a trial judge has specifically ordered that child support must be paid from the retired spouse's pension account. *See e.g., In re Marriage of Wood*, 66 Or.App. 941, 676 P.2d 338 (1984). Absent such an order, the retirement benefits are merely another asset which may be looked to for payment of the support. We hold that those benefits are not immune from execution, in the circumstances of this case, under section 1408.

 The husband also frames the following issue on appeal:

> Does an attorney for the Plaintiff have the right to exercise garnishment proceedings for the benefit of minor children when those garnishment proceedings provide that payment is to be made to the attorney?

From his argument on this issue we discern that the husband is adamantly opposed to the wife's attorney being paid for his services with money intended as child support. However, we believe this to be a matter of private contract between the wife and her agent-attorney. The attorney simply was collecting an unpaid judgment due the wife. The husband is in no position to legally question, or interfere with, that relationship. Moreover, because the purpose of I.C. § 32–710A, providing for support payments to be made through the court clerk, is to facilitate enforcement for the benefit of the obligee, we hold that any error by the constable in remitting directly to the obligee's agent in this case is harmless. We uphold the district court's determination of the issues concerning the writs of execution.

## IV

▇ Finally, the wife asks for rescission of an order of the magistrate holding her in contempt for violating the 100 mile restriction in the divorce decree. Part of her argument in this regard is the same as that raised on her cross-appeal from the magistrate's judgment, *i.e.* that such a restriction is unconstitutional. We have concluded that this restriction was not unconstitutional. However, the wife also argues that the magistrate was without jurisdiction to hold her in contempt of court because the affidavit of the husband—which commenced the contempt proceeding—fails to state that she was served with the divorce decree or had actual knowledge of the residency restriction set forth in the decree. She contends that such an affirmative allegation is necessary to vest the trial court with jurisdiction to hear the contempt proceeding. *See Jones v. Jones,* 91 Idaho 578, 428 P.2d 497 (1967) *and Bandelin v. Quinlan,* 94 Idaho 858, 499 P.2d 557 (1972).

In *Jones,* the appellant had been adjudged in contempt of court for failing to pay child support as ordered in a divorce decree. Our Supreme Court reversed the district court's order of contempt. The Court held that the district court had acquired no jurisdiction to entertain the contempt proceeding because the initiating affidavit failed to allege that the appellant or his attorney had been served with the support order (which the appellant was charged with having violated) or that he, the appellant, had actual knowledge of the support order. The Court ruled that such an allegation was "essential" to vest jurisdiction over the contempt proceeding in the lower court. The Supreme Court further noted that "[w]here the affidavit [commencing the contempt proceeding] fails to allege all essential material facts, however, such deficiencies cannot be cured by proof supplied at the hearing, [citations omitted], or by judicial notice of the court's own record." 91 Idaho at 578, 428 P.2d at 500. The Court remanded the cause for further proceedings "including leave to amend the affidavit." *Id.*

We have reviewed the affidavits filed by the husband to commence the contempt action against the wife in this case. Those affidavits fail to allege service upon the wife or upon her attorney of the divorce decree with which she is charged with violating. Nor do the affidavits allege that the wife had actual knowledge of said decree. Under *Jones,* we are constrained to hold that the magistrate did not acquire jurisdiction to adjudge the wife guilty of contempt of court for violating the residency restriction in the decree. It follows that the district court erred in affirming the magistrate's contempt order. We therefore vacate the contempt order but remand this cause to the district court for further proceedings, including leave to amend the initiating affidavits to supply the missing essential allegation. *Jones, supra.*

In summary, the order of the district court, upholding the judgment and decree of divorce, is affirmed. The orders of the district court refusing to modify child custody and clarifying collection of alimony and child support are affirmed. The order refusing to set aside the contempt citation of the wife is reversed, the contempt order is vacated and the cause is remanded. No attorney fees or costs awarded on appeal.

SWANSTROM, J., concurring specially.

The parties to this appeal have long since cut their ties with the State of Idaho. Except for this appeal they have chosen to litigate their more recent disputes in another state far removed from Idaho. I would suggest that—notwithstanding the remand in *Jones*—we should not feel constrained to remand for the purpose of relitigating the question of a six-year-old contempt, nor should the trial court view our remand as a mandate to reconsider the question. The husband had one fair opportunity to make a case for contempt. I cannot see where the substantial rights of either party would now be affected adversely if the trial judge should decide not to entertain further litigation on this issue.