775 P.2d 154

Serona A. KNOWLTON, the duly appointed and qualified Conservator of the Estate of Catherine Mudd Provolt, an incapacitated person, Plaintiff–Respondent,

v.

Thomas J. MUDD and Connie Rae Mudd, husband and wife, Defendants–Appellants.

No. 17475.

Court of Appeals of Idaho.

June 1, 1989.

Roger L. Williams, Kamiah, for defendants-appellants.

James E. Schiller, Nampa, for plaintiff-respondent.

BURNETT, Judge.

This is an appeal from a judgment declaring an amendment of a real estate contract to be void, leaving the original contract in force. The dispositive issue is whether substantial evidence supports the district court's finding that one of the parties lacked the requisite mental capacity to amend the contract. We affirm the judgment.

In 1977, Catherine Mudd Provolt sold a parcel of commercial real estate to her son, Thomas Mudd, and his wife, Connie. The contract of sale provided that the buyers would pay $100,000, plus interest at eight percent, over the course of ten years. The payments would consist of $836.44 per month plus a "balloon" payment at the end of the ten-year period. These payments would be made through an escrow holder, and title would remain in the seller until the contract was fully performed. The contract prohibited any assignment of the buyers' interest, without the seller's consent, until at least one-third of the $100,000 contract balance had been paid.

From 1978 through 1983, the buyers made payments of $1,000 per month, exceeding the contract requirement. In 1984, however, they made only one partial payment, and for several years thereafter they made no payments at all. During this period, Mrs. Provolt took no action to declare a default or otherwise to enforce the buyers' obligations. After executing the contract, Mrs. Provolt had become debilitated, mentally and physically, by Parkinson's disease. In 1987, Mrs. Provolt's physician advised her daughter, Serona Knowlton, that someone should be legally designated to handle Mrs. Provolt's affairs. On August 10, 1987, Knowlton filed a petition to be appointed as conservator of her mother's estate. Thomas Mudd received notice of the petition.

Mudd then visited his mother and talked to her about changing the contract. On August 20, 1987, Mudd and his attorney presented a document to Mrs. Provolt, which she signed. The document was an amendment to the contract, purportedly reducing the balance to $71,000 without regard to approximately $20,500 in interest accrued during the years of nonperformance. The amendment also reduced the interest rate from eight percent to seven percent, lowered the monthly payments from $836.44 to $600.00 per month, deleted the ten-year performance deadline, created a 180-day cure period in the event of future default, and eliminated Mrs. Provolt's right to disapprove any assignment before one-third of the contract balance had been paid.

One week later, on August 27, 1987, Knowlton was appointed conservator of Mrs. Provolt's estate. She promptly filed this suit, asking that the contract amendment be set aside. A non-jury trial was conducted. Three witnesses, including Mrs. Provolt's physician, testified that she was incapable of understanding the contract amendment when she signed it. In contrast, Mudd testified that he observed no signs that his mother was incapable of understanding the document. Upon this conflicting evidence, the trial judge found that Mrs. Provolt lacked sufficient mental capacity to understand the amendment or its effect upon her. The judge also found that Mudd had occupied a "confidential relationship" toward his mother and had failed to show that the amendment was fair to her. This appeal followed.

Mudd argues that the amendment was fair and that the judge erred in finding otherwise. In our view, however, the dispositive issue is whether Mrs. Provolt

possessed the mental capacity to enter into an agreement amending the extant contract. It is axiomatic that in order to form a valid agreement, each party must have the requisite mental capacity. As recited in the RESTATEMENT (SECOND) OF CONTRACTS (1981), at § 12:

(1) No one can be bound by contract who has not legal capacity to incur at least voidable contractual duties. Capacity to contract may be partial and its existence in respect to a particular transaction may depend upon the nature of the transaction or upon other circumstances.

(2) A natural person who manifests assent to a transaction has full legal capacity to incur contractual duties thereby *unless* he is

(a) under guardianship, or

(b) an infant, or

(c) *mentally ill or defective*, or

(d) intoxicated.

(Emphasis added.)

Our Supreme Court has elaborated the test for determining whether a person has the mental capacity to enter into a binding agreement. The test is

whether the person in question possesses sufficient mind to understand, in a reasonable manner, the nature, extent, character, and effect of the act or transaction in which he [or she] is engaged; the law does not gauge contractual capacity by the standard of mental capacity possessed by reasonably prudent men [or women]. It is not necessary to show that a person was incompetent to transact any kind of business, but to invalidate his [or her] contract it is sufficient to show that he [or she] was mentally incompetent to deal with the particular contract in issue.

*Olsen v. Hawkins*, 90 Idaho 28, 33, 408 P.2d 462, 464–65 (1965) (quoting 17 C.J.S. *Contracts* § 133(1)(e), at 860); *see also McPheters v. Hapke*, 94 Idaho 744, 497 P.2d 1045 (1972). Here, the trial judge focused on the proper issue when he determined that Mrs. Provolt did not understand the contract amendment.

The judge's determination was a finding of fact. Our review of such a finding is limited. We do not weigh the evidence; rather, we inquire whether the finding is supported by substantial, albeit conflicting, evidence in the record. *Ortiz v. Dept. of Health and Welfare*, 113 Idaho 682, 747 P.2d 91 (Ct.App.1987). If it is so supported, the finding cannot be deemed clearly erroneous under I.R.C.P. 52(a). *Rasmussen v. Martin*, 104 Idaho 401, 404, 659 P.2d 155, 158 (Ct.App.1983). We regard evidence as "substantial" if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. IDAHO APPELLATE HANDBOOK §§ 3.3.1 and 3.3.2.2 (Idaho Law Foundation, Inc., 1985). As corollaries to these general principles, we give due regard to the special opportunity of the trial court to judge the credibility of witnesses appearing personally before it. I.R.C.P. 52(a). We also recognize the trial court as the arbiter of the weight, if any, ascribed to expert opinion testimony. *Simpson v. Johnson*, 100 Idaho 357, 597 P.2d 600 (1979).

In this case, as we have noted, the district court heard the testimony of three persons familiar with Mrs. Provolt's mental impairment. The treating physician, a neurologist, testified that Mrs. Provolt's disease rendered her unable to perform simple monetary calculations and wholly incapable of understanding a transaction as complex as the contract amendment. Two nurse's aides also testified. The first, Mrs. Provolt's step-daughter, testified that Mrs. Provolt "was incapable of understanding what was going on" and that she did not have the mental capacity to understand a contract. The second nurse's aide, Provolt's step-granddaughter, similarly testified that Mrs. Provolt was mentally incompetent and that she could not understand the document she signed. Both nurse's aides also testified about specific conduct by Mrs. Provolt which had led them to form their opinions regarding her mental impairment.

In our view, this testimony constitutes substantial evidence in support of the trial judge's finding on Mrs. Provolt's mental capacity. Although Mudd gave contrary

testimony, we cannot deem the judge's finding to be clearly erroneous. Accordingly the judgment voiding the contract amendment will not be disturbed.

Knowlton has requested an award of attorney fees on appeal, pursuant to a provision of the original contract and pursuant to I.C. § 12–121. There is some question about the applicability of the contract provision to this lawsuit. However, the statute is clearly applicable. In *T–Craft Aero Club, Inc. v. Blough,* 102 Idaho 833, 642 P.2d 70 (Ct.App.1982), we held that an award under I.C. § 12–121 is appropriate where an appeal presents no meaningful issue on a question of law but simply invites the appellate court to second-guess the trial judge on conflicting evidence. This is such a case. Therefore, we award a reasonable attorney fee, to be determined under I.A.R. 41.

The judgment of the district court is affirmed. Costs and attorney fees to respondent, Knowlton.

WALTERS, C.J., and SWANSTROM, J., concur.