874 P.2d 516

**Eugene SHABINAW and Vesna Shabinaw, husband and wife, Plaintiffs–Respondents.**

v.

**Charles A. BROWN, M.D., Defendant–Appellant,**

No. 19162.

Supreme Court of Idaho, Boise, November 1993 Term.

April 4, 1994.

Rehearing Denied June 22, 1994.

Quane, Smith, Howard & Hull, Boise, Idaho, for appellant.

Eugene and Vesna Shabinaw, pro se respondents.

McDEVITT, Chief Justice.

## I

## BACKGROUND AND PROCEDURE

Due to an inflammatory bowel disease known as ulcerative colitis, Eugene Shabinaw ("Mr. Shabinaw") had a total colectomy performed at the University of Michigan in 1968. Mr. Shabinaw apparently recovered quickly from the operation. Except for an ileostomy, an external appliance inserted as part of the operation, his life was unaffected.

The night of December 16, 1983, Mr. Shabinaw began experiencing severe abdominal cramps and noticed that his ileostomy was not functioning properly. Early the following morning, the Shabinaws went to the hospital where Mr. Shabinaw's regular physician, Dr. Adams, examined him. Dr. Adams concluded that Mr. Shabinaw was suffering from an acute small bowel obstruction. Dr. Adams then called Dr. Charles Brown ("Dr. Brown"), a local surgeon, because he believed Mr. Shabinaw's condition required immediate surgery.

There is conflicting testimony regarding whether Dr. Brown described the risks of this surgery to Mr. Shabinaw. Dr. Brown did not remember whether he discussed the risks with Mr. Shabinaw, but testified that he had a habit and routine of making such disclosures. Mr. Shabinaw, who had been medicated with the pain killing drug Demerol, did not recall speaking with Dr. Brown before surgery. Mrs. Shabinaw was in the room with Mr. Shabinaw before surgery and stated that, although Dr. Brown spoke briefly with Mr. Shabinaw before the surgery, they did not discuss the possible risks of surgery.

There is no dispute that Dr. Brown did not discuss any alternatives to surgery with Mr. Shabinaw before this operation. Dr. Brown testified that this was because no alternative treatment was reasonable under the circumstances, although he agreed on cross-examination that, with the power of retrospection, "a viable, favorable, acceptable, appropriate, beneficial form of treatment with Gene Shabinaw would have been placing a nasogastric tube as an alternative to surgery." Dr. Brown further testified that a nasogastric

tube would relieve this type of bowel obstruction in thirty to fifty percent of all cases.

Several severe complications developed following this surgery. Because of these complications, Dr. Brown again operated on Mr. Shabinaw. Dr. Brown testified that he anticipated several potential complications arising from the second operation. The complications Dr. Brown expected, although somewhat more severe, were essentially the same as those Mr. Shabinaw experienced after the first operation. The complications Mr. Shabinaw experienced after both the first and second operations included sepsis, fistulae, and various postoperative infections. Mr. Shabinaw also experienced renal failure and adult respiratory distress syndrome after the second operation.

According to Dr. Brown, Mr. Shabinaw knew what complications to reasonably expect from the second operation. This knowledge was the result of both having experienced complications after the first surgery and a series of conversations between Mr. Shabinaw and Dr. Brown between the first and second operations. He also testified that he informed Mr. Shabinaw of the alternatives to the second surgery. Mr. Shabinaw claimed that Dr. Brown did not explain either alternatives to surgery or the potential complications of surgery. Mr. Shabinaw also testified that he would have avoided surgery had he known alternatives were available. Following the second operation, Mr. Shabinaw developed serious complications and was transferred to Sacred Heart Hospital in Spokane, Washington.

The Shabinaws filed suit against Dr. Brown in district court, alleging medical malpractice in the performance of both operations. After both parties presented their evidence and rested, the Shabinaws moved to amend their complaint under I.R.C.P. 15(b) to comport with the facts proven at trial. Specifically, they asked leave to allege Dr. Brown violated his duty to obtain informed consent from Mr. Shabinaw before both the December and February operations. The trial court granted the motion.

The jury returned a special verdict finding that Dr. Brown neither failed to meet the relevant standard of care nor failed to obtain Mr. Shabinaw's informed consent before treating him. The Shabinaws timely moved for a partial judgment notwithstanding the verdict ("judgment n.o.v.") or, in the alternative, a partial new trial on the informed consent issue. The court issued a memorandum decision and order denying the Shabinaws' motion for a judgment n.o.v. and granting the Shabinaws' motion for a partial new trial.

The district court found that Dr. Brown's retrospection could not influence the feasibility of nasogastric therapy as an alternative to the first surgery, stating that "[i]t either was or was not *initially* a viable alternative regardless of the bad result obtained on the first surgery." (District court's emphasis.) The court inferred from Dr. Brown's testimony that nasogastric therapy was a viable alternative to the first surgery. This inference, combined with the uncontroverted evidence that alternative treatment was not discussed, convinced the district court that the clear weight of the evidence was insufficient to justify the jury's verdict.

The court also found that Dr. Brown did not clearly disclose the complications that he anticipated before the second surgery to Mr. Shabinaw. The court based this finding on its determination that Dr. Brown's testimony did not seem forthright or credible, and that complications Mr. Shabinaw developed after his previous surgery could not serve as notice of complications likely to occur after the second surgery.

Dr. Brown contends on appeal that the district court abused its discretion by permitting the Shabinaws to amend their complaint to allege lack of informed consent and by granting the Shabinaws' motion for a partial new trial on the informed consent issue.

## II

### MOTION TO AMEND

[1, 2] I.R.C.P. 15(b) provides that, when the parties expressly or impliedly consent to try an issue not raised by the pleadings, "the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved

thereby...." It is within the discretion of the trial court to determine whether an issue has been tried with the express or implied consent of the parties. *Lynch v. Cheney*, 98 Idaho 238, 241, 561 P.2d 380, 383 (1977). This Court has long recognized that the trial court has wide discretion to permit such amendments. *E.g., Sweitzer v. Dean*, 118 Idaho 568, 574–75, 798 P.2d 27, 33–34 (1990) (quoting *Obray v. Mitchell*, 98 Idaho 533, 567 P.2d 1284 (1977)).

■ In order to determine whether the trial court abused its discretion, we must ascertain whether the trial court (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989) (quoting *Associates Northwest, Inc. v. Beets*, 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct. App.1987)); *Sun Valley Shopping Ctr. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991). Dr. Brown does not dispute the fact that the trial court perceived the issue as discretionary, but rather contends that the court did not apply the proper legal standards when it granted the Shabinaws' motion to amend their complaint.

■ According to Rule 15(b), the party objecting to amendment must establish that the admission of evidence on the issue would prejudice that party's ability to maintain its action or defense. Dr. Brown's sole allegation of prejudice is that the Shabinaws moved the trial court to amend the complaint late in the proceedings and did not state, in any of their pretrial disclosures, that the issue would be presented. The proper inquiry, however, is not whether parties are adequately informed before the issue is tried with their consent. The focus under Rule 15(b) is whether the parties expressly or impliedly consented to try the issue. *See Smith v. King*, 100 Idaho 331, 335, 597 P.2d 217, 221 (1979) ("[O]nce the court determines that the issue has been litigated with the consent of the parties, it has no discretion to deny the motion to amend....") (quoting 6A

Wright & Miller, Fed.Practice & Procedure Civil § 1493).

Before ruling on the Shabinaws' motion, the trial court reviewed the testimony of the experts who testified at trial, finding that every expert witness, including Dr. Brown, testified that the failure to inform a patient of viable alternatives to surgery violates both the national and local standards of medical care. Based on this evidence, the court concluded that the parties consented to try the issue. Dr. Brown points to no portion of the record indicating that the issue was not tried, and has alleged no particular prejudice from the court's ruling. Although there is conflicting evidence in the record regarding whether reasonable alternatives to surgery were available, the record clearly establishes that the duty to disclose alternatives when obtaining consent was an issue raised at trial. We therefore conclude that the court did not abuse its discretion by allowing the Shabinaws to amend their complaint to allege lack of informed consent.

## III

## NEW TRIAL

■ Two weeks after the trial court ruled on the Shabinaws' motion, this Court issued *Sherwood v. Carter*, 119 Idaho 246, 805 P.2d 452 (1991). In *Sherwood*, this Court "overrule[d] those portions of *Rook v. Trout* which held that I.C. § 39–4304 merely provides alternative defenses to a claim of lack of informed consent, and which held that the statute provides for a subjective patient-based standard of disclosure for informed consent." *Id.* at 256, 805 P.2d at 462 (overruling *Rook v. Trout*, 113 Idaho 652, 747 P.2d 61 (1987)). Because at the time it issued its memorandum decision and order the trial court was bound by case law that has since been overruled, we remand this action to allow the trial court to reconsider its decision in light of the new law. *See Davis v. Professional Business Servs.*, 109 Idaho 810, 818, 712 P.2d 511, 519 (1985), *appeal after remand, Magic Valley Radiology Associates, P.A. v. Professional Business Servs., Inc.*, 119 Idaho 558, 808 P.2d 1303 (1991).

Dr. Brown also asserts that the jury's verdict on the issue of negligence eliminated the possibility that Mr. Shabinaw's injuries were proximately caused by the operations. The jury's determination that Dr. Brown did not operate negligently does not establish that the operations were not the proximate cause of some or all of the Shabinaws' damages, or that Mr. Shabinaw would not have consented to the operations if he were properly informed. A physician can be liable for failure to obtain informed consent before treatment without being negligent in the actual treatment of the patient. *Sherwood*, 119 Idaho at 251, 805 P.2d at 457.

## IV

## CONCLUSION

For the reasons stated above, the district court's order is vacated and remanded for reconsideration.

BISTLINE, JOHNSON, TROUT and SILAK, JJ., concur.