893 P.2d 823

**Gerald M. MILLER, Plaintiff–Respondent,**

v.

**Sandra MANGUS, Defendant–Appellant.**

No. 21409.

Court of Appeals of Idaho.

April 24, 1995.

Sandra Mangus, Bonners Ferry, pro se.

Cooke, Lamanna, Smith & Cogswell, Priest River, for respondent. Cynthia A. Elliott, argued.

WALTERS, Chief Judge.

This is a child custody case. Sandra Mangus appeals from a magistrate's order awarding legal and physical custody of her son to his biological father. For the reasons stated below, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Gerald Miller and Sandra Mangus met in 1980, and J.B., their son, was born in 1981. They lived together but never entered into a marital relationship and, a couple of years after J.B.'s birth, separated. Gerald continued to visit J.B. until 1984, at which time Gerald and Sandra apparently had a major disagreement. As a result, Sandra moved with J.B., and did not inform Gerald of their new location. Gerald contacted Sandra's parents, and although they knew where Sandra and J.B. were living, they would not disclose this information to Gerald. Between 1984 and 1989, Gerald corresponded with J.B. through Sandra's parents but contributed nothing to J.B.'s support.

In 1987, Sandra applied for public assistance benefits. As part of the process, she was required to identify J.B.'s biological father. In 1989, Gerald received notice that a proceeding for enforcement of child support had been referred to Hamilton County, Ohio, from an Idaho Department of Health and Welfare action initiated in Kootenai County. That proceeding resulted in the entry of a judgment for paternity and a support order in 1990.

At the beginning of the support proceeding, Gerald consulted with a child therapist to determine how to reenter J.B.'s life and reestablish their relationship. Following the advice of the therapist, Gerald began writing to Sandra. At this time, Sandra was married and living in a rural area of Boundary County in Idaho. J.B. was the oldest of her four children. Gerald had also married. He and his wife and child were living in Ohio.

Gerald's efforts to reestablish contact with J.B. were unsuccessful. He instituted this action, seeking an award of joint legal and physical custody, with Sandra receiving primary physical custody and alternative holiday and summer visitation for himself. However, after J.B. was allowed to visit Gerald in Ohio in 1992, Gerald became concerned with J.B.'s education and socialization as well as what appeared to be Sandra's efforts to block Gerald's contact with his son. Gerald amended his complaint to request that he

receive sole legal and physical custody with visitation rights being granted to Sandra.

Prior to these proceedings, Sandra home-schooled her children. At the time this custody action was brought to trial, J.B. was nearly twelve years old and, ordinarily, if he had been attending either public or private school, would have been in the sixth grade. As a result of Gerald's amended complaint, the trial court ordered Sandra to take J.B. to the Boundary County School District for academic testing. The testing took place in January and February of 1993.

J.B.'s test results were conflicting. The January test results indicated that J.B.'s reading and written language abilities were at the first grade level and that his math ability was at the third grade level. The results of the February test indicated that his reading and written language skills ranged between the third and fourth grade levels. Because Sandra believed these results were inaccurate, she hired Dr. Phil McQueen, an independent educational psychologist, to retest her son. J.B. was tested by McQueen in May of 1993. Dr. McQueen assessed J.B. to be above the sixth grade level in reading and math, with spelling as an area of weakness. Notably, Sandra had J.B. tutored for a short time before testing began, but later discontinued the tutoring because of financial difficulties and family time demands.

It is important to note that even though Gerald and Sandra are both educated individuals, they neither share the same philosophy on educating children nor follow the same lifestyle. Sandra has a B.A. in psychology and opposes the public and private schooling system. She and her husband place great emphasis on being in tune with nature and the environment. Gerald also has a B.A. in psychology and has completed more than a year of post-graduate work. He places great importance on formal education, career goal development and resultant financial rewards.

Both Gerald and Sandra were represented by counsel when the case went to trial before the magistrate court. The magistrate granted sole legal and physical custody of J.B. to Gerald. Sandra was awarded visitation rights which included six weeks in the summer, every spring break and Christmas in even-numbered years. In addition, the magistrate ordered that Sandra could visit J.B. any time she was in Ohio or in the vicinity. Sandra appealed and the magistrate's judgment was affirmed by the district court. Sandra further appeals, assigning several bases of error to the magistrate's decision.

## ISSUES AND ANALYSIS

Sandra claims the magistrate erred by concluding that: (1) J.B.'s best interests would be served if both his legal and physical custody were awarded to Gerald; (2) J.B. was educationally deprived; (3) Sandra unreasonably excluded Gerald from J.B.'s life; (4) Sandra cannot meet J.B.'s needs as an adolescent; and (5) Sandra's visitation rights should be limited.

On appeal, this Court is not bound by the district court's appellate review of a magistrate's custody determination, but we focus directly on the correctness of the magistrate's determination, independently of the decision of the district court. *Biggers v. Biggers*, 103 Idaho 550, 555, 650 P.2d 692, 697 (1982); *Roeh v. Roeh*, 113 Idaho 557, 558, 746 P.2d 1016, 1017 (Ct.App.1987). In awarding custody, the welfare and best interests of children are of paramount importance, and the court is required to provide for them as it deems necessary or proper to achieve this end. I.C. § 32–717; *Schmitt v. Schmitt*, 83 Idaho 300, 305, 362 P.2d 884, 887 (1961). The care, custody and education of minor children is committed to the sound discretion of the trial court and, unless such discretion is clearly abused, the court's judgment as to custody will not be disturbed on appeal. *Osteraas v. Osteraas*, 124 Idaho 350, 352, 859 P.2d 948, 950 (1993); *Ziegler v. Ziegler*, 107 Idaho, 527, 531, 691 P.2d 773, 777 (Ct.App. 1985). In determining whether the lower court abused its discretion, the appellate court must ascertain whether the trial court (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason. *Shabinaw v.*

*Brown,* 125 Idaho 705, 708, 874 P.2d 516, 519 (1994). Moreover, in considering findings of fact made by the trial court, the reviewing court must review the evidence in the light most favorable to the party who prevailed at trial. *Higginson v. Westergard,* 100 Idaho 687, 689, 604 P.2d 51, 53 (1979); *Pieper v. Pieper,* 125 Idaho 667, 669, 873 P.2d 921, 923 (Ct.App.1994). Accordingly, the question the reviewing court must address on appeal is not what other conclusion could have been reached by the trial court but whether the conclusion reached is supported by substantial and competent evidence. *Pass v. Kenny,* 118 Idaho 445, 447–48, 797 P.2d 153, 155–56 (Ct.App.1990).

▇ Inasmuch as Sandra's first three claims are intertwined, we will address them together. Sandra argues that the trial court abused its discretion by awarding sole legal and physical custody of J.B. to Gerald. She provides two allegations supporting this argument. First, Sandra suggests the magistrate erred when the magistrate stated that this case did not hinge on home schooling versus public schooling, and that J.B. was educationally deprived. Sandra argues that she adhered to I.C. § 32–202 which requires that a child between seven and fifteen years of age must be instructed in subjects commonly and usually taught in the public schools of the state of Idaho, and if the child's parent or guardian fails to provide this instruction, the child must attend public, private or parochial school during the school year. Sandra claims that the home schooling J.B. has received meets these requirements. She also argues that the magistrate erred when the magistrate determined that J.B. had a third grade reading level especially in light of Dr. McQueen's assessment.

Second, Sandra argues that the magistrate erred in finding that she unreasonably excluded Gerald from J.B.'s life. She claims that Gerald excluded himself from J.B.'s life by choice; he chose not to support J.B. financially and emotionally until Gerald was located in Ohio and ordered to pay child support. Sandra urges that even then Gerald made no effort to contact J.B. until three months after the support order. Sandra also asserts that Gerald resisted the support action by requir-

ing blood tests to determine paternity and, even after paternity was established, Gerald would not voluntarily pay the support as ordered. Sandra asserts that it became necessary to garnish Gerald's wages to ensure the child support payments.

Sandra does not dispute the fact that the trial court perceived all of the issues she raises as discretionary. However, Sandra contends that the trial court abused this discretion. In the magistrate's findings of fact and conclusions of law, the magistrate found that both Sandra and Gerald are well intended and desire what is in J.B.'s best interest; that Sandra strongly believes in home schooling and has home-schooled J.B.; that J.B.'s home schooling situation is not ideal because it lacks structure and curriculum and, therefore, may be equivalent to no schooling; that because of the deficiencies in his home schooling, J.B. has not developed educationally as he should; and that J.B. is at least of average intelligence yet is reading at the third grade level. We note that although J.B.'s academic testing provides conflicting results, the magistrate did not find McQueen's testimony and his testing results credible. Excluding the results of this third test, the record supports the magistrate's findings that J.B. tested two grade levels, if not three, below the sixth grade. The magistrate also expressed concern about Sandra's commitment to J.B.'s formal education if J.B. were allowed to continue to reside with his mother on the condition that he attend school. Sandra testified that in order to assist J.B. with his studies, she had at one time hired a tutor. However, the tutor was discontinued because of financial difficulties and because transportation to and from tutoring took Sandra away from her other three children. Finally, the magistrate found that Gerald was familiar with the services of the school district in his area which could benefit J.B. in his current situation. The educational factor, the magistrate concluded, was only one of several relevant factors considered in awarding J.B.'s custody to Gerald.

With regard to J.B. developing a relationship with his biological father, Sandra demonstrated a continued willingness to exclude

Gerald from J.B.'s life. This is evident by her testimony that after she and Gerald split up in 1982, Gerald stayed in touch with J.B. for a couple of years. In 1984, Sandra moved, taking J.B., without informing Gerald of her new location. Between 1984 and 1990, the only way Gerald could communicate with his son was through Sandra's parents because Sandra would not provide Gerald with her address. Even after paternity was established, Sandra did not make it easy for Gerald to be part of J.B.'s life. She testified that she did not have a telephone, when, in fact, Gerald later discovered that this was false. Sandra also purposely failed to inform Gerald that she and J.B. would be visiting her parents in Indiana, which is within a day's drive of Gerald's home, after Gerald specifically asked her if she had any plans to visit the midwest.

The magistrate expressed a concern that by Sandra denying Gerald access to J.B., one-half of J.B.'s identity was being kept from him. She found Sandra to be virtually blind to the benefits of J.B. having a relationship with his natural father. Sandra testified that her husband, Paul, was fulfilling the role of father to J.B. Even though the magistrate found Paul to have demonstrated nurturing qualities toward J.B., the magistrate also noted that the bottom line is that Gerald is J.B.'s natural father, and Sandra was shutting him out of J.B.'s life both verbally and physically. The magistrate expressed more confidence with Gerald's ability to honor and respect Sandra, as J.B.'s mother, and J.B.'s relationship with her than Sandra's ability to honor and respect Gerald, as J.B.'s father, and J.B.'s relationship with him. The court concluded that both Gerald and Sandra would have access to J.B. if custody were awarded to Gerald.

The magistrate's findings regarding J.B.'s educational needs and Gerald's ability to honor and respect Sandra's parental philosophy and lifestyle are supported by the record. We uphold the magistrate's conclusion that J.B.'s best interests will be served with the award of legal and physical custody to Gerald.

■ Next, Sandra argues that the court erred by stating that Sandra cannot meet J.B.'s needs as an adolescent. She claims that J.B. will not necessarily have more opportunities with Gerald than he would in Sandra's home.

■ During the trial, testimony was received explaining that children become more independent from the family structure as they become adolescents. The magistrate was concerned that Sandra's "very tight" bond with J.B. would make it difficult for Sandra to allow J.B. to develop into his own person. The trier of fact is in a unique position to make determinations of credibility and to discern the import of the testimony. *Angleton v. Angleton,* 84 Idaho 184, 198, 370 P.2d 788, 796 (1962); *Knowlton v. Mudd,* 116 Idaho 262, 264, 775 P.2d 154, 156 (Ct.App. 1989). An appellate court is therefore constrained to accept the findings of the trier of fact if the record discloses substantial evidence supporting those findings. *Knowlton,* at 264, 775 P.2d at 156. Here the magistrate's findings that Sandra may not be able to meet J.B.'s developmental needs as an adolescent are supported by the record.

■ Finally, Sandra requests visitation rights of three months during the summer with J.B. instead of the six weeks assigned to her by the magistrate. The record shows that this request was briefly made at trial. We hold that the record supports the magistrate's decision setting the visitation rights granted to Sandra. However, with regard to visitation rights, the magistrate explained that, "if Sandra determines that those conditions would be unreasonable, ... she can request a hearing to have some more definition to that visitation." Accordingly, if Sandra believes that a material change of circumstances has subsequently occurred warranting modification of the custody order, the issue should be brought again before the magistrate for review. *Rohr v. Rohr,* 126 Idaho 1, 878 P.2d 175 (Ct.App.1994).

## CONCLUSION

We conclude that the magistrate did not abuse its discretion by awarding legal and physical custody of J.B. to Gerald. We also uphold the magistrate's findings that J.B. was educationally deprived, and that Sandra

unreasonably excluded Gerald from J.B.'s life. Finally, we affirm the trial court's decision with regard to the visitation rights granted to Sandra.

Costs to respondent. No attorney fees on appeal are awarded.

LANSING and PERRY, JJ., concur.